# EXHIBIT A



**SCHEDULE**
**CONTRACT NUMBER: 393633-0**
**SHIPPER: IWC OIL & REFINERY S CORPORATION**

*This Schedule is issued pursuant to, and is governed exclusively by, the terms and conditions of the Contract by and between the Parties, dated 10/11/2021.*

**Contract Type:** Unit Tow
**Shipper Address for Notice:** 8610 N. NEW BRAUNFELS AVE., SUITE 301
SAN ANTONIO, TX 78217
**Term:** Three [3] month term from March 16, 2022 through June 16, 2022 for multiple trips.

Shipper shall have the option to extend for one [1] year which shall be declared in direct continuation of the three [3] month term, as mutually agreed.

EQUIPMENT: M/V Sainte Marie
CHEM 3225 [30k bbl]
CHEM 3226 [30k bbl]
or suitable replacement[s]
**Equipment:** Double-skin tank barge[s] equipped for transporting the designated cargo, together with towing power as required.

| Cargo | Origin | Destination | Base Rate | Minimum Per Barge |
|---|---|---|---|---|
| ULTRA LOW SULFER DIESEL | HOUSTON, TX | CORPUS CHRISTI, TX | $6,400.00 per Day | |

**Tankerman:** ACBL shall provide one (1) tankerman per watch for the loading and unloading of the barge Shipper shall pay ACBL's then-current rates for all tankermen in excess of one (1) per watch.

**Assisting:** All charges for Shipper's account.

**Clean-In:** All charges for Shipper's account.

**Clean-Out:** All charges for ACBL's account.

**Dockage:** All charges for Shipper's account.

**Fleeting:** All charges for Shipper's account.

**Fuel-Boat:** All charges for Shipper's account.

**Lightering:** All charges for Shipper's account.

**Lock delay:** All charges for ACBL's account.

**Lube:** All charges for Shipper's account.

**Standby Boat:** All charges for Shipper's account.

**Wharfage:** All charges for Shipper's account.

**Cancellation Fee:**

**Payment Terms:** Invoices shall be payable in immediately available funds within fifteen (15) days of date of invoice.

**Special Provisions:** Barge Only rate shall be $1,700.00 per day per 30K barge if mutually agreed by owner and charterer.

Load 1
Supplier: BP
Product: HSD
QTY: 50k bbl
Load Port: KMI Pasadena
Discharge Port: Corpus or Brownsville
Laycan Window: 3.16 - 3.19

Load 2
Supplier: Exxon
Product: ULSD
QTY: 50k bbl
Load Port: KMI Pasadena
Discharge Port: Brownsville
Laycan Window: 3.20 - 3.22

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

CLAUDIA APARICIO
IWC OIL & REFINERY S CORPORATION
8610 N. NEW BRAUNFELS AVE., SUITE 301
SAN ANTONIO, TX 78217

AMERICAN COMMERCIAL BARGE LINE LLC
Box 610, JEFFERSONVILLE, IN 47131-0610
Area Code (812) 288-0100
www.bargeacbl.com

## LIQUID CARGO CONTRACT

| CONTRACT NUMBER: 393633 | | CONTRACT DATE: 10/11/2021 |
|---|---|---|

This **LIQUID CARGO CONTRACT**("Contract") is made and entered into as of the date above by and between **AMERICAN COMMERCIAL BARGE LINE LLC** ("ACBL") and **IWC OIL & REFINERY S CORPORATION** ("Shipper").

1. **SCOPE OF SERVICES:** The terms and conditions in this Contract shall apply to and govern ACBL's provision of barge transportation services to Shipper as specified on the Schedule attached hereto and incorporated herein by reference. The Schedule may contain one or more of the following commercial terms, as applicable:

**BASE RATE [FREIGHT, TOWING AND / OR DAY RATE]**
**BASE RATE ADJUSTMENT**
**CANCELATION FEE**
**DEMURRAGE RATE**
**VOLUME**
**TERM**
**TANKERMAN CHARGES**
**CARGO**
**MINIMUM TONS PER BARGE**
**ORIGIN / DESTINATION**
**FREE TIME**
**STANDBY TUG CHARGES**
**EQUIPMENT**
**FUEL AND LUBE**
**CLEANING**

2. **TERM:** The term of the Contract is set forth on the Schedule. Notwithstanding the expiration or termination of this Contract, the Parties obligations, including obligation to pay freight, towing, day rate, demurrage and other charges, as applicable, shall continue until conclusion of any voyage in progress and all barges are cleaned and returned to ACBL in accordance with the terms of this Contract.

3. **BASE RATE AND OTHER CHARGES:** Shipper agrees to pay freight, towing, day rate and other charges as provided on the Schedule or otherwise herein. The Base Rates and any subsequent adjustment to the Base Rates shall be set forth on the Schedule. Unless otherwise provided on the Schedule, Freight Rates include one (1) shift of ACBL's barge to and from the dock at origin and one (1) shift of ACBL's barge to and from the dock at destination; all other shifting is for Shipper's account. All standby charges (other than by a Unit Tow boat), including without limitation standby during lock delays, are for Shipper's account at the rate specified on the Schedule or, if no rate is specified, then at ACBL's current rates. All fleeting is for Shipper's account unless otherwise provided on the Schedule. For Unit Tow and time chartered boats, all fuel and lube shall be for Shipper's account. All other expenses reasonably required for the movement of cargo which are not otherwise set forth on the Schedule shall be for the account of Shipper. Shipper shall also pay any Federal or State taxes, fees, tariffs or charges that may be due for the transportation services rendered hereunder; including but not limited to the amount of any user charge, fee or toll, imposed, levied or collected for the use of the Mississippi River or its tributaries, or the use of the Intracoastal Waterways, or of the locks, dams, ports, or harbors in said river systems. If the Schedule specifies that barge(s) are being used for storage purposes, then such contract shall be treated as a day rate plus towing contract, and if no towing charges are specified, the towing rate shall be the then-current shifting charges from Shipper's facility to/from ACBL's choice of fleet.

4. **PERFORMANCE (Affreightment contracts):** Shipper agrees to ship the tonnage or utilize the number of barges as set forth on the Schedule, which shipments shall be in accordance with the Shipment Schedule also set forth on the Schedule. Shipper shall provide ACBL a yearly forecast, by month, for Schedules with a Term spanning one (1) year or greater. The yearly forecast shall be submitted to ACBL at the time of Contract consummation and, if applicable, on the anniversary date(s) of this Contract. In addition, for all term contracts, a monthly forecast by week shall be submitted no later than the fifth (5th) working day of the immediately preceding month. The yearly and monthly forecasts shall not exceed the volume or number of barges as set forth on the Schedule for such period, without ACBL's prior consent. ACBL shall place the appropriate barge capacity required to ship the contracted tonnage in accordance with the monthly forecast. Failure to timely provide the yearly or monthly forecasts may result in ACBL's inability to fulfill Shipper's orders.

5. **PERFORMANCE (Unit Tow, Day Rate and dedicated barge contracts):** A Unit Tow shall mean the unit comprising of one or more barges and the towboat. Dedicated barge(s) shall mean specific barges that are in Shipper's dedicated service for a period of time (either on an affreightment or day rate basis). During the Term, ACBL shall place the equipment, as identified on the Schedule, in Shipper's dedicated service, which shall mean the equipment will operate exclusively for Shipper on a consecutive voyage basis. ACBL may, from time to time, for its convenience, substitute a vessel of like-kind, capacity and horsepower, subject to Shipper's approval which approval shall not be unreasonably withheld. Any substitution of equipment hereunder may be confirmed via E-mail. ACBL shall be responsible for clean-out costs associated with barge substitutes made for the convenience of ACBL; provided, Shipper shall remain responsible for the cost of removal of polymer buildup, removal of excess cargo, tank bottoms or debris, and associated disposal costs. Except as may be permitted under Section 23, Shipper shall have no right to return equipment before the end of the term, or be released, relieved or discharged from any obligation or liability hereunder for any reason whatsoever, including, without being limited to: downturn in business, or the inability, prohibition or interference with the use of the equipment because of weather or

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

navigational conditions, accident, or governmental laws, rules or orders.

6. **EQUIPMENT AND CREW:** ACBL will use due diligence to tender barges and towboats that are seaworthy, properly manned, equipped and supplied as may be applicable for the intended voyage. The barges to be supplied under this Contract will be all steel tank barges of double skin construction. While in the service of Shipper per the terms of this Contract, all barges and towboats shall have all of their certificates, including but not limited to, all documents issued by the United States Coast Guard or other regulating body, current and not extended. The towboat shall have sufficient horse power for the intended voyage. ACBL will furnish at its expense a full complement of qualified, certificated personnel sufficient to navigate, load, discharge, maintain and manage the vessels.

7. **BARGE PLACEMENT AND RELEASE (Affreightment contracts):** Unless otherwise specified on the Schedule, Shipper will provide ACBL no less than ten (10) business days advance written notice (Email acceptable) for each desired barge placement date, which barge placement date shall be in accordance with the monthly forecast. ACBL shall deliver ACBL's barge to a dock, vessel or fleet as designated by Shipper for loading or unloading, and the barge shall be deemed actually placed in the possession of the Shipper at the time of physical delivery to the designated dock, fleet or vessel ("actual placement"). In the event that the dock, vessel or fleet designated by Shipper is unable to accept ACBL's barge for any reason at the time it is tendered by ACBL, ACBL may deliver the barge to an alternate location of ACBL's choice and the barge shall be deemed constructively placed in the possession of Shipper at the time of physical delivery to the alternate location ("constructive placement"). Shipper shall be responsible for all additional costs associated with moving the barge to the alternate location and utilizing the alternate location.

8. **LAYTIME, FREE TIME AND DEMURRAGE (Affreightment contracts):** Laytime shall commence the first minute following placement, actual or constructive, of the barge for loading or unloading and shall end the first minute following completion of loading or unloading and release of the barge to ACBL. Freetime is the time given to Shipper to load and unload a barge without Demurrage charges. The total Freetime shall be set forth on the Schedule. If the length of Laytime exceeds the amount of Freetime, then Shipper shall pay Demurrage at the rate set forth on the Schedule for all excess time. Saturday, Sunday and all holidays not excepted. Demurrage shall be billed at origin and destination and as otherwise set forth herein. For dedicated barges subject to Demurrage, the barges will be put on placement upon arrival at origin, whether or not there is a pending order, and will be put on demurrage upon completion of discharge until it commences its next voyage (unless voyage instructions have been provided by Shipper and barge is merely awaiting pick-up). Any time lost during loading, discharge or stripping solely as a result of the failure of ACBL's equipment, shall not count as Laytime.

9. **BARGE ACCEPTANCE; INITIAL CLEANING:**

(a) It is the Shipper's obligation to provide cleaning instructions prior to placement of a barge or to determine that Shipper can load over prior cargo without cleaning. It is Shipper's obligation to inspect each barge prior to loading. Commencement of loading shall constitute Shipper's acceptance of the barge as clean and suitable for the Cargo. **In no event shall ACBL have any liability for cargo contamination once Shipper commences loading**. Shipper hereby releases ACBL from any such liability, regardless of cause and regardless of ACBL's negligence.

(b) Shipper may only reject a barge if Shipper determines that cleaning was not in accordance with Shipper's instructions or the prior cargo is different than as stated by ACBL. Upon proper rejection of a barge, ACBL will take reasonable efforts to clean the barge or provide an alternate barge at no cost to the Shipper. Any alternate barge will be subject to the terms of subsection (a), above.

(c) If Shipper rejects a barge for any reason other than as set forth in subsection (b), above, the barge shall remain on Laytime (Affreightment contracts) or on-hire (Unit Tow or day rate contracts), in each case uninterrupted. Shipper shall be responsible for the costs associated with any such rejection, including without limitation, inspections, additional shifting, fleeting and standby charges. If Shipper requests additional cleaning, Shipper shall be responsible for the costs of such additional cleaning, including shifting to the cleaning facility and all cleaning charges. For Affreightment Contracts, the barge shall remain on Laytime at all times, retroactive to the original placement date until completion of loading and release of the barge to ACBL in accordance with Section 7. For Unit Tow or Day Rate contracts, the Tow or barge, as applicable, shall remain on Day Rate at all times.

10. **PORT AND FLEET DELAYS:** If tug service for the tow arriving at a third-party fleet (excluding CGB in St. Louis, MO and Campbell Transportation in Georgetown, PA) servicing Shipper's loading/unloading facility either (i) does not commence within four (4) consecutive hours upon the boat's arrival, or (ii) has commenced within four (4) hours upon the boat's arrival but tug service is not completed within twelve cumulative (12) hours upon the boat's arrival, then Shipper shall pay, per barge, a port delay fee per hour or portion thereof (i.e., rounded up to the next hour) starting upon expiration of the applicable time requirements of (i) and (ii) and continuing until the tug service is completed, in the applicable amount(s) set forth in the table below, and calculated per barge as follows: *Total time the boat awaited tug service, minus either four (4) consecutive hours or twelve (12) cumulative hours, as applicable, multiplied by the hourly rate for the river area of the fleet, divided by the total barges being dropped/picked-up*. This charge is inclusive of boat standby charges.

| RIVER AREA | HOURLY FEE |
|---|---|
| Gulf (Baton Rouge thru Davant) | $400 |
| Lower Mississippi (below St. Louis thru point above Baton Rouge) | $525 |
| St. Louis | $500 |
| Ohio River (Pittsburgh to Cairo) | $450 |
| Upper Mississippi (above St Louis to St. Paul) | $450 |
| Illinois River | $450 |

Additionally, if tug service does not commence within four (4) hours upon boat arrival, then ACBL may, at its sole option: (i) depart and continue its voyage, without dropping off or picking up barge(s), as applicable, or (ii) drop barge(s) at an alternate location in accordance with Section 7, at which time the barge(s) will be deemed constructively placed. In no event shall ACBL be responsible for any delays in delivering barges.

**11. DELIVERY AND REDELIVERY (Unit Tow and dedicated barge contracts):** ACBL shall deliver the dedicated barge(s) or Unit Tow, as applicable to the port, place, berth, dock or mooring as specified on the Schedule; provided, ACBL may hold at a nearby location until such port, place, berth, dock or mooring is available. Day Rate or Laytime, as applicable, shall commence immediately upon arrival at the delivery location. For Unit Tow contracts, ACBL may (but shall have no obligation to) utilize the towboat for its own purposes while barges are awaiting loading or unloading or are otherwise not in use by Shipper; provided, such use does not interfere with ACBL's performance under this Contract. In such event, Shipper shall be charged a barge-only rate as specified on the Schedule or, if none specified, then at ACBL's then-current rates. The dedicated barge(s) or Unit Tow, as applicable, shall be redelivered to ACBL upon expiration of this Contract at the location specified on the Schedule, and all charges shall continue until redelivery.

**12. LOADING AND UNLOADING:** Unless otherwise agreed, ACBL will furnish or procure the necessary tankermen for loading and unloading the barges. All charges for the tankerman and related services, including equipment rental and fresh air, shall be for Shipper's account, unless otherwise provided on the Schedule. Terminals are responsible for hose connection to their facilities. It is always Shipper's responsibility to seal each tank at origin. In the event H2S Cargo(es) are transported hereunder, the additional expense of detection and monitoring equipment will be for Shipper's account. Except for the startup of discharge and during the stripping of the final amounts of Cargo, ACBL shall use commercially reasonable efforts to ensure that the barge(s) maintain either an average minimum discharge rate as specified on the Schedule or a backpressure of 95 PSI at the barge rail during Cargo transfer operations; provided shore facilities permit.

**13. OVERDRAFT BARGES:**

(a) Shipper shall load the Barges so as not to exceed ACBL's requested draft. ACBL may, at its option, refuse to accept a Barge for transport if it exceeds the requested draft. Upon rejection of a Barge, Shipper shall, at Shipper's cost and expense, take appropriate corrective action to comply with ACBL's requested draft. The Barge shall remain on demurrage or hire uninterrupted until appropriate corrective action is taken and Shipper releases the barge to ACBL.

(b) If ACBL does not reject a Barge that is overdraft, then ACBL shall take such actions with regard to the Barge that is reasonable under the circumstances. Shipper shall be responsible for any tow delays, tow work, lightering, cargo transfer, reconsignment fees and other costs and expenses associated with handling an overdraft Barge. ACBL will use commercially reasonable efforts to notify Shipper of any such costs and expenses in a timely manner.

(c) If a Barge was originally in compliance with ACBL's requested draft at the time of pick-up, but while the Barge is in-route, due to changes in river conditions or other events outside of ACBL's or Shipper's control, Owner determines that such Barge is in an overdraft condition, then ACBL will notify Shipper and take such actions as are reasonable under the circumstances. The costs of any such action shall be equitably allocated between the Parties on a case-by-case basis as determined by ACBL in its reasonable discretion. Notwithstanding the foregoing, if a storage barge or a barge on placement becomes overdraft, all costs and expenses associated with such overdraft shall be for Shipper's account.

**14. TANK CALIBRATION AND GAUGING:** All barge cargo tanks shall have been calibrated and ullage tables prepared in accordance with applicable API/ASTM standards. The barge shall have draft markings both fore and aft. The ullage tables shall provide trim corrections. The reference point for gauging, the striking height at the gauging point, and the compartment number shall be clearly indicated on the gauging hatch of each cargo tank. Copies of the above-mentioned ullage tables shall be provided to the Shipper upon reasonable request. Shipper, or its designated representative, shall have the right to gauge all barge tanks (including cargo, void, slop, and fuel tanks, if present) and to sample the contents of any of these tanks after

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

**15. SAFE BERTH:** Shipper will exercise due diligence to provide safe loading and discharging berths, free of wharfage charges, at which ACBL's vessels may proceed to, lie at, and depart from always safely afloat. Shipper shall not be deemed to warrant the safety of public channels, fairways, the approaches thereto, anchorages, or other publicly maintained areas either within or outside the port areas where the vessels may be directed. Shipper is solely responsible for securing access to any loading or unloading facility. Upon delivery of the barge to a loading or unloading location, Shipper shall be deemed to be in sole possession of the barge (but excluding Unit Tow contracts where the boat remains with the barge). Shipper shall be responsible for the safety of the barge and any Cargo onboard, and compliance with all laws and regulations, until the barge is released to and removed by ACBL, regardless of whether Shipper owns or operates the loading or unloading location. Without limiting the generality of the foregoing, Shipper shall provide watchman service consistent with industry standards and ensure that the barges are adequately moored with warning lights properly displayed. Barges and Cargoes in Shipper's possession shall be held without charge to ACBL. Shipper agrees to assist ACBL in asserting and prosecuting any claims that it may have against the owner or operator of a third-party dock or other facility where Shipper may direct ACBL, including without limitation, leveraging Shipper's contractual and business relationships

**16. MOVEMENT OF CARGO:** ACBL is a private carrier. Nothing contained in this Contract shall be construed as creating a demise of ACBL's vessels. ACBL shall retain day-to-day control over the operation and navigation of the vessels. ACBL does not guarantee transit times or to transport cargo in time for any particular vessel or market. Unless specific voyage(s) or trade lane(s) are specified on the Schedule, the equipment may be employed in any lawful trades in or between such ports as may be directed by Shipper; provided, that such waterways are, in ACBL's reasonable discretion, safe for navigation of the particular vessels at that time, and within the navigation endorsements of applicable Coast Guard documents and navigational warranties of applicable insurance. Any tow carrying all or any of the Cargo shall be at liberty to call any port or ports in or out of the customary route and in any order, to tow and be towed, to assist vessels in distress, to deviate for any purpose and to dock and repair during the voyage. If emergency conditions or other circumstances dictate, ACBL shall have the right to transfer, lighter or forward the Cargo or to load or discharge it at any time; provided, ACBL shall provide notice to Shipper as is reasonable under the circumstances. ACBL shall also have the right to procure towage from vessels not owned, chartered or operated by ACBL and shall have the right to employ leased or chartered vessels in the performance of this Contract. Unless a specific boat is specified on the Schedule, ACBL shall have the right to shift or interchange the barge from one to another towing vessels as often as it may find convenient or expedient.

**17. RE-CONSIGNMENT AND STOP OFF:** Prior to placement at origin or while barges are enroute to destination, Shipper, with ACBL's consent and upon acceptance of ACBL's reconsignment fee, may re-consign and/or stop off barges to an origin or destination not provided on the Schedule. Any re-consignment or stop off is subject to ACBL's approval, and ACBL will review each re-consignment or stop-off on a case-by-case basis. In addition to the re-consignment fee, Shipper shall also be responsible for all costs, delays and expenses resulting from the re-consignment or stop off, including without limitation, tow rearranging, shifting, fleeting and additional towage charges.

**18. RIVER CLOSURES & LOCK DELAYS:**

**A. River Closures**. During river closures or periods of restricted movements, including without limitation river closures or restricted movements due to high or low water, ice, hurricane or tow restrictions, which limit the ability of ACBL to engage in normal operations along the intended route, the following actions shall be taken:

i. For affreightment contracts, ACBL shall notify Shipper of such conditions or restrictions via e-mail and Shipper will have the option to either (x) re-consign the barge to a location with navigation conditions that allow normal operations, or (y) accept placement of the barge(s) in a fleet of ACBL's choice, at which time the barges will be placed on Demurrage (no freetime) until the barge is able to depart the fleet after normal navigation and operational conditions resume. If Shipper reconsigns a barge, Shipper shall pay a reconsignment fee and all other charges per Section 17. If the parties cannot reach agreement on a reconsignment fee, then the barge(s) will be placed in a fleet of ACBL's choice, at which time the barges will be placed on Demurrage (no freetime) until the barge is able to depart the fleet after normal navigation and operational conditions resume.

ii. For day rate plus towing contracts, ACBL shall notify Shipper of such conditions or restrictions via e-mail and Shipper will have the option to either (x) re-consign the barge to a location with navigation conditions that allow normal operations, or (y) accept placement of the barge(s) in a fleet of ACBL's choice until normal navigation and operational conditions resume. If Shipper reconsigns a barge, Shipper shall pay a reconsignment fee and all other charges per Section 17. If the parties cannot reach agreement on a reconsignment fee, then the barge(s) will be placed in a fleet of ACBL's choice until the barge is able to depart the fleet after normal navigation and operational conditions resume. The barge shall remain on day rate uninterrupted.

iii. For unit tow contracts, ACBL shall notify Shipper of such conditions or restrictions via e-mail and the unit tow will be held at the closest point with normal navigation conditions on route to the specified location unless and until Shipper directs the tow to an alternate location with navigation conditions that allow normal operations, and in all cases Day Rate and all other charges shall continue uninterrupted

**B. Lock Delays**. In the event of a lock delay, ACBL reserves the right to charge a lock surcharge as follows:

i. There will be a twenty-four (24) hour grace period beginning upon arrival of the towing vessel at the lock (the "Grace Period").

ii. For affreightment contracts (including Unit Tow contracts that are billed on an affreightment basis), upon expiration of the Grace Period, each barge shall be placed on Demurrage at a rate not to exceed the demurrage rate as set forth on the Schedule; and Shipper shall pay standby boat charges per barge, as provided in Section 3.

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

iii. For day rate plus towing contracts, day rate shall continue uninterrupted and, upon expiration of the Grace Period, Shipper pay standby boat charges per barge, as provided in Section 3.

iv. Demurrage and/or standby shall continue through the day the boat begins its lockage.

v. For Unit Tow contracts, day rate and other charges, including fuel and lube, shall continue uninterrupted during any lock delay.

**19. HIGH WATER SURCHARGE (Affreightment and Day Rate Plus Towing contracts):** If any portion of the below river areas are deemed in a high water event under a Waterways Action Plan or any U.S. Coastguard directive, industry agreement or other controlling rule or regulation, then Shipper shall pay a high water surcharge in the applicable amount(s) set forth in the table below, per barge, for each loaded barge (whether or not a dedicated barge) and/or empty (dedicated barge(s) only) that has commenced or will commence its voyage at milepoints not within the below river area(s) and thereafter traverses any part of such river area(s) subject to such high water event.

If a barge is already in transit within such river area(s), and a high water surcharge is implemented, then the high water surcharge shall not be applicable to such barge(s).

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Baton Rouge Gauge: | **35' up to 40'** | | | | **40' and above** | | | |
| Direction: | **Downstream** | | **Upstream** | | **Downstream** | | **Upstream** | |
| Load / Empty: | **Load** | **Empty** | **Load** | **Empty** | **Load** | **Empty** | **Load** | **Empty** |
| | | | | | | | | |
| River Area:<br>**UM 175 to LM 151** | | | | | | | | |
| Barge: < 200' x < 35' | $792 | $446 | $2,371 | $1,334 | $1,370 | $770 | $4,118 | $2,316 |
| Barge: < 200' x > 35' | $1,188 | $669 | $3,557 | $2,001 | $2,055 | $1,155 | $6,177 | $3,474 |
| Barge: > 200' x > 35' | $1,584 | $892 | $4,742 | $2,668 | $2,740 | $1,540 | $8,236 | $4,632 |
| River Area:<br>**LM 954 to LM 151** | | | | | | | | |
| Barge: < 200' x < 35' | $642 | $361 | $1,905 | $1,072 | $1,147 | $645 | $3,419 | $1,923 |
| Barge: < 200' x > 35' | $963 | $542 | $2,858 | $1,608 | $1,721 | $968 | $5,129 | $2,885 |
| Barge: > 200' x > 35' | $1,284 | $722 | $3,810 | $2,144 | $2,294 | $1,290 | $6,838 | $3,846 |

**20. CARGO DATA AND POLLUTION:** Shipper at its sole cost and expense shall obtain and provide all shipping papers and all other documents required under applicable regulations to lawfully load, carry, transport and discharge the Cargo. Shipper warrants that the Cargo will be as described on the Schedule. Shipper has provided or will provide ACBL prior to loading the Safety Data Sheets ("SDS") for the Cargo tendered hereunder. Shipper represents and warrants that the Cargo provided for loading hereunder shall be consistent with the provided SDS. ACBL reserves the right to refuse carriage of any Cargo tendered to it for transportation if such Cargo was not previously identified or if it is inconsistent with the provided SDS. In the event a discharge or release of Cargo occurs that results in or threatens to cause pollution damage, ACBL is authorized to promptly take whatever measures are reasonably necessary to prevent or mitigate the damage. Any of the aforementioned measures taken by ACBL shall be at ACBL's expense except when: (i) such discharge or release was caused or contributed to by Shipper, or (ii) the cost of the measures taken, together with all other liabilities, costs and expenses of ACBL arising out or in connection with such discharge or release exceeds the limitation of liability to which ACBL is entitled under applicable law; in which case such measures shall be at Shipper's expense

**21. PAYMENT TERMS:** Freight and Towing charges shall be considered fully earned on the initiation of loading of ACBL's barge. No deduction shall be made to the Freight or Towing charges due hereunder even if the Cargo is lost or damaged, the voyage is cancelled or abandoned by Shipper, there is a cargo claim or there are any navigational delays. Unless the Schedule provides for a fixed rate, Freight and Towing charges shall be computed on the higher of the Minimum Tons per Barge or the actual net quantity loaded into the barges as shown by any of a shore storage tank flow meter, barge calibration tables or as otherwise agreed between the parties. Shipper will furnish ACBL, free of cost, copies of all loading certificates. ACBL may invoice Shipper for Freight or Towing charges at any time after completion of loading. Other charges, including but not limited to Demurrage, tankering, fleeting and standby charges will be invoiced upon completion of the move or periodically at ACBL's option. For Unit Tow and Day Rate billing, ACBL shall invoice on a per trip basis; provided, if a trip exceeds thirty (30) days or if equipment is held awaiting instructions, ACBL may at its option invoice Shipper on an interim basis. Unless otherwise specified on the Schedule, Day Rate (for Unit Tow or Day Rate contracts) or

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

Freight and Demurrage (for affreightment contracts) shall be due for the entire Term regardless of whether the equipment is returned early (for affreightment contracts, barges that are returned early shall be charged Demurrage through the end of the Term). Unless otherwise specified on the Schedule, invoices shall be due in immediately available funds within thirty (30) days of the date of invoice. ACBL shall have a lien on all Cargo for all amounts due under this Contract or under any other contract between Shipper and ACBL or its affiliates, which lien will survive delivery of the Cargo. Interest shall be assessed on any unpaid and undisputed invoice, beginning on the date the invoice is due until paid in full, at the rate of one and one-half percent (1.5%) per month. In the event an invoice is not paid when due (but excluding invoices subject to a good faith dispute), ACBL may, at its option, suspend all services until such past due invoices are paid in full. Shipper shall pay Demurrage or Day Rate, as applicable, at the rate set forth on the Schedule, during any suspension hereunder. If Shipper fails to timely pay an invoice(s), ACBL may also require different payment terms for the balance of the Contract, including but not limited to, payment in advance before placement of a barge for loading or unloading. Shipper shall pay ACBL all costs incurred in collecting any past due amount from Shipper, including court costs and reasonable attorney fees.

22. **OFF-HIRE (Unit Tow contracts):** For Unit Tow contracts, ACBL shall be allowed twenty-four (24) hours per month per Unit Tow for miscellaneous maintenance (downtime) as is or may be required. There shall be no carryover of unused downtime. Subject to the twenty-four hour allowance, a Unit Tow shall be considered "off-hire" and all charges to Shipper shall cease only in the following circumstances: (i) deficiency of personnel or stores, (ii) repairs, gas-freeing for repairs, time in and waiting to enter dry dock for repairs, (iii) breakdown (whether partial or total) of machinery, boilers or other parts of the vessel or her equipment, (iv) collision, stranding, or accident caused by the negligence of ACBL, and (v) any time lost during loading, discharge or stripping solely as a result of the failure of ACBL's equipment; and in each case such loss continues for more than five consecutive hours or cumulates to more than five hours; provided, Shipper will continue to pay a pro-rata portion of the Day Rate based on available equipment

23. **THIRD PARTY WORK OPPORTUNITIES (Unit Tow contracts):** In the event that Shipper desires ACBL to temporarily place a Unit Tow(s) in third-party service, then Shipper shall make a formal request to ACBL. The decision to pursue an outcharter shall be in the sole and absolute discretion of ACBL. In the event ACBL is willing to outcharter a Unit Tow(s), then ACBL and Shipper shall agree on the approximate start date and end date of the outcharter period, allowable cargo and cleaning requirements. If ACBL is able to enter into an agreement with a third-party to utilize the equipment, ACBL will invoice the third-party directly for the day rate, fuel and lube and other charges associated with the Unit Tow(s) as agreed between ACBL and the third-party; provided, if the third-party charges for the Unit Tow(s) are less than what would otherwise be due from Shipper hereunder, then Shipper will be invoiced the difference. It is understood that ACBL's inability to, or decision not to pursue an outcharter, shall not alter Shipper's responsibility hereunder, including its responsibility to pay all amounts due. ACBL shall have no liability to Shipper in the event that a third-party does not timely return an outchartered Unit Tow, or for delays if equipment is damaged in third-party service.

24. **CARGO RISK:** ACBL shall not be responsible for any admixture of two or more descriptions of Cargo, nor for cargo loss, contamination or deterioration in the quality of the Cargo, unless and to the extent such admixture, loss, contamination or deterioration is caused by: (1) the unseaworthiness of a barge resulting from failure of ACBL to exercise due diligence; or (2) the negligence of ACBL in the performance of this Contract; and then only for the amount of Shipper's deductible under its cargo insurance policy or $250,000, whichever is less. Shipper shall pass down to any consignee or freight purchaser the foregoing cargo risk provision for the benefit of ACBL. In the case of actual or suspected Cargo loss or damage, Shipper shall, within twenty-four (24) hours of unloading, provide to ACBL written notice of such loss or damage, and will provide ACBL an opportunity to jointly survey the Cargo prior to disposition of the Cargo. No salvage sale or other disposition of the Cargo will be made by Shipper without first giving advance written notice and full disclosure to ACBL of the proposed disposition. All actions, suits or other proceedings against ACBL for Cargo damage must be brought within four (4) months of the unloading of the barge, otherwise the claim is time-barred; provided, if a claim has been submitted to ACBL prior to expiration of the four (4) months period and such claim has not been fully denied by ACBL, then the four (4) month period shall not begin until ACBL has denied the claim in full. Any Cargo remaining on board the barge following release of the barge (affreightment contracts) or at the time the barge(s) are taken out of Shipper's service (Unit Tow and day rate contracts) shall be deemed abandoned.

25. **MARINE INCIDENT REPORTS**: ACBL will, as soon as reasonably possible, notify Shipper if any equipment, while in Shipper's service, is involved in a significant incident, including any significant pollution, release of Cargo, grounding, allision or collision; or suffers any systems failure relative to safety, or other casualty causing equipment delay or risk to the crew, Cargo, or the environment. This notification in no way relieves ACBL of the responsibility to make all notifications as required by applicable law.

26. **SHIPPER REPRESENTATIVES:** Shipper (i) shall be solely responsible for all cargo inspections, sampling and tank sealing, (ii) shall inspect each barge prior to initial loading for suitability, (iii) may, upon reasonable notice to ACBL, inspect any vessel subject to this Contract at a loading or discharging berth, or other location which will not substantially interfere with the operation of the vessels, and (iv) may, subject to Section 12, directly arrange for or provide its own tankerman for loading or unloading the barges (each person performing any such activities, a "Shipper Representative"). Shipper Representatives are subject to ACBL vetting and approval prior to access to ACBL equipment. Regardless of any prior vetting or approval by ACBL, access for Shipper Representatives to ACBL's vessels shall be at Shipper's sole risk and expense. In no event shall ACBL be responsible for or have any liability for personal injury, illness, disease or death of any Shipper Representative, and Shipper specifically agrees not to pursue any legal action relating thereto, whether based upon *Fed. Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404 (1969), 33 U.S.C. § 905(b) via assignment, or otherwise. Shipper shall (i) arrange for direct billing from any third-party Shipper Representative and shall be solely responsible for all such invoices, and (ii) be responsible for and hereby assumes all risk and liability, including claims for bodily injury, cargo contamination and environmental damage and clean-up, arising out of or related to the actions of such Shipper Representatives, including claims alleged to be caused by the fault, strict liability, sole or concurrent negligence or other fault of ACBL, or the unseaworthiness, defect or negligence of any ACBL vessel.

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

**27. EQUIPMENT CLEANING:**

(a) Except as provided in Section 5 or as otherwise provided on the Schedule, Shipper shall be responsible for (i) all cleaning costs during the Term as may be requested by Shipper, and (ii) the cost of cleaning all barges at the time they are released to ACBL or taken out of Shipper's service (unless ACBL determines in its reasonable discretion that cleaning is not necessary based on the anticipated subsequent use of the barge). Cleaning costs may include, without limitation, hot water wash, removal of polymer buildup, removal of cargo remaining on board (ROBs), tank bottoms or debris, and associated disposal costs. ACBL will recommend a cleaning facility based on, among other things, the location of the barge, the type of cargo, and the capability and experience of the applicable facility. Shipper shall be deemed to have selected the recommended cleaning facility, and directs ACBL to use such facility, unless, prior to delivery of a barge to such facility, Shipper directs ACBL to another cleaning facility in the same area, which is on ACBL's approved vendor list, and, which ACBL reasonably determines has equivalent capability and experience to handle the subject cargo. Unless otherwise provided on the Schedule, Shipper shall also pay Demurrage or Day Rate, as applicable, at the rate set forth in the Schedule for all time that the barge is at the cleaning facility or awaiting cleaning. During cleaning, Unit Tow barges shall be at the barge- only rate as specified on the Schedule, or, if none specified on the Schedule, at ACBL's then-current rate.

(b) For contracts spanning one (1) year or greater, Shipper shall pay all cleaning costs in preparation of regulatory shipyard/ inspections, prorated based on the time the barge was in Shipper's service since its last regulatory shipyard/inspection; provided, Shipper shall remain responsible for all costs associated with the removal of polymer buildup, ROBs, tank bottoms or debris, and associated disposal costs.

**28. EQUIPMENT DAMAGE:** Shipper shall be responsible for any costs incurred by ACBL or damage to vessels in each case resulting from the specific trade requested by Shipper, including but not limited to, damage caused by brackish waters and removal of invasive species; but specifically excluding damage from allisions, collisions and groundings. For equipment that has not been in Shipper's dedicated service, the cost of such damage shall be prorated among all customers that utilized the barge in the specific trade based on the time the barge was in each customer's service since its last inspection/repair.

**29. AUDIT:** ACBL shall retain all records and accounts related to the services provided herein for at least there (3) years from the completion date of any services. ACBL shall permit Shipper access at reasonable times to review and audit all records and accounts relating to the services provided under this Contract, which shall be at Shipper's sole cost and expense. ACBL shall retain all records and accounts related to the services provided herein for at least there (3) years from the completion date of any services.

**30. INDEMNITY AND LIMITATION OF LIABILITY:**

(a) ACBL does hereby assume liability for, and does hereby agree to defend, indemnify, protect, save and keep harmless Shipper from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs (including attorney's fees as and when incurred), of any kind and nature, imposed on, incurred by or asserted against Shipper, related to any injury, illness or disease suffered by or death of any employee of ACBL or ACBL's contractors regardless of whether caused in whole or in part, by the fault, strict liability, sole or concurrent negligence or fault of Shipper.

(b) Shipper does hereby assume liability for, and does hereby agree to defend, indemnify, protect, save and keep harmless ACBL and its vessels from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs (including attorney's fees as and when incurred), of any kind and nature, imposed on, incurred by or asserted against ACBL related to any injury, illness or disease suffered by or death of any employee of Shipper or Shipper's subcontractors (including without limitation, longshore workers) regardless of whether caused in whole or in part, by the fault, strict liability, sole or concurrent negligence or fault of ACBL, or the unseaworthiness, defect or negligence of any vessel.

(c) Except with regard to cargo claims which are governed by Section 24, ACBL does hereby assume liability for, and does hereby agree to defend, indemnify, protect, save and keep harmless Shipper from and against any and all losses and damages to personal property, whether or not involving a third party claim, incurred by or asserted against Shipper to the extent caused by (i) ACBL's negligence in the performance of this Contract, or (ii) ACBL's failure to use due diligence to tender a seaworthy barge.

(d) Shipper does hereby assume liability for, and does hereby agree to defend, indemnify, protect, save and keep harmless ACBL from and against any and all losses and damages to personal property, whether or not involving a third party claim, incurred by or asserted against ACBL (i) to the extent caused by the negligence of Shipper or any of Shipper's vendors, customers, consignees or contractors (other than ACBL) in the performance of this Contract, (ii) for any liability of ACBL to a consignee, freight purchaser or other third party, for cargo loss or damage for which ACBL would not otherwise be responsible or liable under this Contract.

(e) TO THE EXTENT THAT ANY PORTION OF THE ABOVE INDEMNITY IS HELD TO BE INVALID OR UNENFORCEABLE, SUCH HOLDING SHALL NOT AFFECT THE REMAINING OBLIGATIONS TO PROTECT, INDEMNIFY AND HOLD HARMLESS ACBL HEREUNDER.

**31. GENERAL AVERAGE; NEW JASON CLAUSE**: York/Antwerp Rules 2016 and any subsequent modifications thereto shall apply to this Contract. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, ACBL is not responsible, by statute, contract or otherwise, the cargo, Shipper, consignees or owners of the cargo shall contribute with the ACBL in general average to the payment of any sacrifices, losses or expenses of a

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving ship is owned or operated by ACBL, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as ACBL or its agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo, Shipper, consignees or owners of the cargo to ACBL before delivery.

32. **BOTH TO BLAME COLLISION:** If ACBL's vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of ACBL in the navigation or in the management of ACBL's vessel, the owners of the cargo carried hereunder will indemnify ACBL against all loss or liability to the other or non- carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying ship or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying vessel or ACBL. The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

33. **INSURANCE:**

(a) ACBL shall maintain, or shall cause its vendors and contractors to maintain, as applicable, the following insurance: (i) Hull and Machinery insurance in amounts not less than the "agreed" values of the vessels used in performance of this Contract; (ii) Marine General Liability, including contractual liability, cross-liability and independent contractor coverage, with limits of not less than $1,000,000 per occurrence; (iii) Protection and Indemnity (P&I) Insurance (to include Jones Act Crew Coverage, Collision, and Tower's Liability) including contractual liability, with the "as owner" clause deleted, in the amount of $1,000,000, (iv) Vessel Pollution Liability in the amount of $5,000,000, and (v) Excess Liability Insurance over the foregoing insurance of not less than $5,000,000 in excess of primary limits, with cross-liability coverage. All insurance coverages outlined above shall name Shipper as additional insured with a full waiver of subrogation. The insurance policies required above shall be independent of the indemnity obligations herein and the scope of the indemnity assumed by ACBL herein shall apply to the required insurance regardless of whether the indemnity provisions contained herein are enforceable.

(b) Shipper shall maintain, and shall cause its vendors, customers, consignees and contractors, including docks, to maintain, as applicable, the following insurance: (i) Workers' Compensation Insurance (including Longshore and Harbor Workers' Compensation) to the statutory limits as required by law, and Employers' Liability Insurance (including Maritime Employers Liability) in the amount of $1,000,000, which policies shall contain the Alternate Employer and In Rem Endorsements; (ii) Commercial General Liability, including Cargo Owner liability, contractual liability, cross-liability, charterer's liability, sudden and accidental pollution, independent contractor coverage, and Action Over Indemnity Buyback and In Rem Endorsements, with all watercraft exclusions deleted, in the amount of at least $1,000,000 any one accident or occurrence; (iii) Marine Terminal Operator's Liability and Wharfingers/Landing Owner's Legal Liability with at least $1,000,000 per vessel per occurrence, (iv) Excess Liability Insurance over the foregoing insurance (excluding Workers' Compensation) of not less than $5,000,000* in excess of primary limits, with cross-liability coverage; and (v) all risk cargo insurance on the full value of all cargo transported under this Contract, with coverage to include loss or damage during loading, unloading and while in transit. All insurance coverages outlined above shall name ACBL as additional insured (except Workers Compensation and all risk cargo) with a full waiver of subrogation (all policies). *For the following cargoes, Shipper shall maintain Excess Cargo Owner Liability Insurance in the amount of at least $100,000,000, which shall constitute primary insurance coverage to any insurance coverages that ACBL has in place: Phenol, Chlorine, Acetone Cyanohydrin, Epichlorohydrin, Aniline, Acrylonitrile, Acetonitrile, Butadiene, and Ethylene Dichloride. With the consent of ACBL, Shipper has the right to maintain a program of self-insurance in satisfaction of one or more of the insurance requirements set forth in this Contract; provided, Shipper agrees to indemnify and hold ACBL harmless from and against any claims and liabilities as if such insurance was in effect, inclusive of additional insured and waiver of subrogation provisions. All retentions shall be the responsibility of Shipper. The insurance policies required above shall be independent of the indemnity obligations herein and the scope of the indemnity assumed by Shipper herein shall apply to the required insurance regardless of whether the indemnity provisions are enforceable.

34. **FORCE MAJEURE:**

(a) If a Force Majeure Event occurs, the party that is prevented by that Force Majeure Event from performing any one or more obligations under this Contract will be excused from performing those obligations (other than an obligation to pay money). For purposes of this Contract, "Force Majeure Event" means, with respect to a party, any event or circumstances, regardless of whether it was foreseeable, beyond that party's control, including without limitation, (i) natural disasters (e.g., earthquake, hurricanes, floods, fire, pandemic), (ii) major upheavals (e.g., war, riots, acts of terrorism, sabotage, labor strikes, embargoes), (iii) performance failures of a third-party (e.g., curtailment of energy sources or other raw materials, contracted labor), (iv) extraordinary events (e.g., machinery and equipment failures), and (v) governmental intervention (e.g. government orders, court orders, acts of governmental or civil, military, or naval authorities (whether acting legally or otherwise)), which prevents such party from performing one or more obligations under this Contact. The provisions of this Section 34 are not intended and shall not be construed to affect Shipper's responsibility for a barge in its possession as provided in Section 15.

(b) Upon the occurrence of a Force Majeure Event, the non-performing party shall promptly notify the other party of the occurrence of the Force Majeure Event, its effect on performance, and how long that party expects it to last. Notwithstanding the foregoing, if a Force Majeure Event occurs at Shipper's designated loading or unloading facility, the effective date of the Force Majeure Event shall be (i) the start of the Force Majeure Event, if notice is provided within twenty-four (24) hours of the start of the Force Majeure Event, or (ii) if written notice is not provided within twenty-four (24) hours of the start of the Force Majeure Event, then upon ACBL's receipt of written notice from Shipper.

(c) For affreightment contracts, during a Force Majeure Event, ACBL may allocate barges among its customers in any manner which it deems

CONFIDENTIAL & PROPRIETARY;© 2020 American Commercial Barge Line LLC

appropriate, in its sole and exclusive discretion. A declaration of Force Majeure does not excuse payment of Demurrage for a barge which is on Demurrage status at the time of the declaration. Any barge on Freetime shall be immediately placed on Demurrage, and the amount of used Freetime shall be suspended for the duration of the Force Majeure Event. Upon cessation of a Force Majeure Event, barge(s) that were previously on Freetime shall be placed back on Freetime, and Freetime shall continue from the point where it was suspended.

(d) Unit Tows and equipment on Day Rate (including both boats and barges) shall remain on full Day Rate for the duration of a Force Majeure Event.

(e) Notwithstanding anything herein to the contrary, a declaration of Force Majeure does not excuse payment of Demurrage and other charges that may be imposed pursuant to Section 18.

(f) If the parties are unable to agree on revised placement dates and shipment schedule upon conclusion of a Force Majeure Event, then upon conclusion of the Force Majeure Event ACBL has the right to place affected barge(s) in any manner that it deems appropriate, in its sole and exclusive discretion. In no event does a declaration of Force Majeure excuse Shipper's freight obligation, and, unless otherwise agreed, the Term of this Contract shall be extended for a period equal to the length of the Force Majeure Event. Additional costs incurred by ACBL resulting from a Force Majeure Event including, but not limited to, transportation to and from alternate fleeting locations, shall be for Shipper's account.

35. **GOVERNMENT ACTION (for Contracts with a Term of one year or greater):** Base Rates are based upon the Applicable Law in effect as of the date of this Contract. Any increase in ACBL's cost or ability to operate under this Contract due to a Change of Law shall cause the Base Rates to be equitably adjusted by an amount reasonably necessary to cover any such increase. "Applicable Law" means any applicable statute, ordinance, decree, regulation, license, consent, permit, authorization, or other approval issued by an authority which has appropriate jurisdiction. "Change of Law" means the coming into effect after the date of this Contract of: new or changed Applicable Law; or any judgement of a relevant court of law which changes the interpretation of the Applicable Law. In the event of a Change in Law, ACBL shall deliver a notice to Shipper, which notice shall include the impact of the Change of Law and the effective date of any rate change.

36. **NOTICES:** All required notices under this Contract, unless otherwise provided, shall be in writing and mailed by overnight courier, overnight mail or certified mail, postage prepaid, return receipt requested, to ACBL at 1701 East Market Street, Jeffersonville, Indiana 47130, Attn: Legal Department; and to Shipper at the address provided on the Schedule. The effective date of any such notice shall be (i) the date of delivery of the notice, if by overnight courier or overnight mail service, or (ii) if by certified mail, on the date on which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be.

37. **DRUG AND ALCOHOL POLICY**: ACBL warrants that it has a written policy on Drug and Alcohol Abuse which meets or exceeds the standards set by U.S. Coast Guard regulations, and any other applicable federal, state or local laws or regulations. ACBL further warrants that such policy will remain in effect during the Term of this Contract.

38. **SUBCONTRACTING:** ACBL's obligations hereunder are to Shipper only; there are no third-party beneficiaries. ACBL may subcontract the services, provided, ACBL shall remain fully liable to Shipper for all of its duties and obligations under this Contract. Shipper shall perform, or cause its vendors, customers, consignees and contractors to perform, all of its obligations under this Contract; provided, in any event Shipper shall remain primarily responsible to ACBL for the performance of all such obligations

39. **DEFAULT:** Either party may terminate this Contract upon the breach of any material provision of this Contract by the other party, if the breaching party has not cured such breach within thirty (30) days after written notice thereof by the non-breaching party; provided, the cure period for any default in payment of amounts due hereunder (but excluding invoices subject to a good faith dispute) shall be ten (10) days.

40. **LIMITATION ON DAMAGES**: NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, SPECIAL AND/OR EXEMPLARY DAMAGES (INCLUDING, FOR EXAMPLE, LOSS OF PROFITS, BUSINESS OPPORTUNITY, REPUTATION OR GOODWILL); provided that the foregoing limitation shall not limit or otherwise apply to any damages sought by any governmental authority or other third party against ACBL or Shipper in connection with claims that may be indemnifiable by the other Party under this Contract.

41. **GOVERNING LAW; VENUE**: This Contract will be interpreted and enforced under the general maritime laws of the United States and, to the extent such law is not applicable, then the substantive laws of the State of Indiana shall apply. The parties agree that any action or proceeding arising out of or in connection with this Contract (but excluding cross-claims and third-party claims in third-party actions) will be brought exclusively in the U.S. District Court for the Southern District of Indiana, New Albany Division, or if such court lacks jurisdiction, in state court of competent subject matter jurisdiction located in Clark County, Indiana, and Shipper consents to personal jurisdiction in such courts. Shipper shall cause any consignee or freight purchaser to consent to the foregoing jurisdiction provisions. The Parties (including any consignee or freight purchaser) irrevocably and unconditionally waive and shall not plead, to the fullest extent permitted by law, any objection that they may now or hereafter have to the jurisdiction of such courts over the Parties, laying of venue or the convenience of the forum.

42. **MISCELLANEOUS:** ACBL is an independent contractor. This Contract does not create a partnership or joint venture and neither party is authorized to act as agent or bind the other party. This Contract shall not be assigned by Shipper, whether by operation of law or otherwise, without the prior written consent of ACBL, which consent shall not be unreasonably withheld. Shipper shall not disclose the terms or conditions of this Contract to

any third party without the written consent of ACBL. Both parties recognize that important legal rights are affected by this Contract. This Contract has been proposed by ACBL as a matter of convenience and each party has had the opportunity to seek independent legal advice from attorneys of its own selection. This Contract shall be deemed to have been drafted and prepared by counsel for both ACBL and Shipper for purposes of future construction and interpretation and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Contract. Nothing contained herein shall preclude ACBL from availing itself of the limitation of liability provisions of maritime law. The failure by one party to require performance of any provision shall not affect that party's right to require performance at any time thereafter, nor shall a waiver of any breach or default of this Contract constitute a waiver of any subsequent breach or default or a waiver of the provision itself. If any term or provision of this Contract shall be found by a court of competent jurisdiction to be invalid, illegal or otherwise unenforceable, the same shall not affect the other terms or provisions hereof or the whole of this Contract, but such term or provision shall be deemed modified to the extent necessary in the court's opinion to render such term or provision enforceable, and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent the intent and agreements of the parties herein set forth. Performance of the service by ACBL under this Contract shall be contingent on acceptable credit of Shipper, as determined by ACBL from time to time. Any bill of lading or other shipping document issued in connection with transportation of Cargo under this Contract shall be considered acknowledgment of receipt only, it being the intention of the parties that this Contract is the only document that contains the terms and conditions agreed upon by the parties for the transportation services outlined herein. This Contract constitutes the entire agreement between the parties and there are no other agreements, express or implied, regarding the subject matter hereof. No changes or amendments to this Contract shall be binding unless reduced to writing and duly executed by both parties.

Agreed and accepted:

| AMERICAN COMMERCIAL BARGE LINE LLC | SHIPPER: IWC OIL & REFINERY S CORPORATION |
|---|---|
| Michael SoRelle | RW Newell |
| NAME: Michael SoRelle | NAME: Robert W. Newell, Jr |
| TITLE: Regional Sales Director | TITLE: SVP/CFO |