**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| AMERICAN COMMERCIAL BARGE LINE LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:22-cv-00136-TWP-KMB |
| IWC OIL & REFINERY, LLC, MARCO APARICIO, CLAUDIA APARICIO, | ) ) ) ) | |
| Defendants. | ) ) | |

## ENTRY DENYING MOTION FOR ENTRY OF DEFAULT, GRANTING MOTIONS TO DISMISS, AND DENYING MOTION TO APPOINT COUNSEL

This matter is before the Court on several pending motions: Plaintiff American Commercial Barge Line LLC's ("ACBL") Motion for Entry of Default (Filing No. 19), *pro se* Defendants Marco Aparicio's ("Marco") and Claudia Aparicio's ("Claudia") (together, the "Aparicios") Motions to Dismiss (Filing No. 20; Filing No. 21), and *pro se* Defendant IWC Oil Refinery, LLC's ("IWC"), Motion for Assistance with Recruiting Counsel ("Motion to Appoint Counsel") (Filing No. 24). ACBL initiated this breached a contract action in October 2022 (Filing No. 1). In response to ACBL's motion for entry of a Clerk's default against all Defendants, the Aparicios filed a motion to dismiss the claims against them for lack of personal jurisdiction, insufficiency of service of process, improper joinder, and failure to state a claim upon which relief can be granted. IWC has not responded to ACBL's default motion, but it has filed a motion asking the Court for assistance in obtaining counsel. For the reasons explained below, the Motion for Entry of Default is **denied**, both Motions to Dismiss are **granted**, and the Motion to Appoint Counsel is **denied as moot**.

## I.  <u>BACKGROUND</u>

On October 18, 2022, ACBL initiated this action against IWC, alleging IWC breached its contract with ACBL (the "Contract") (Filing No. 1).  On October 19, 2022, a Summons was issued to IWC's registered agent, Marco Aparicio, at IWC's registered address, 318 E. Nakoma, San Antonio, Texas (Filing No. 2).  ACBL attempted service at IWC's registered address via certified mail, but the service was returned as undeliverable.  ACBL consequently mailed a copy of the Summons and Complaint to IWC's principal place of business, 8610 N. New Braunfels, Suite 301, San Antonio, Texas, which was delivered on November 18, 2022 (Filing No. 19-1 at 2–3).

On December 14, 2022, ACBL moved for an entry of default against IWC (Filing No. 11), but on January 10, 2023, the Court denied the motion because the service address (IWC's principal place of business) did not match the address in the Summons (IWC's registered address) (Filing No. 11).  ACBL then attempted to serve IWC on March 24, 2023, via substituted service on the Texas Secretary of State under Texas Business Organizations Code § 5.251(1) ("Section 5.251") (Filing No. 18; Filing No. 18-1; Filing No. 19-1 at 3).

Less than two weeks later, on April 5, 2023, ACBL filed an Amended Complaint which added new claims for unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation (Filing No. 12-1). The Amended Complaint also added the Aparicios as defendants under a corporate veil piercing theory.  *Id.* ACBL served the Aparicios with Summonses and the Amended Complaint via certified mail on April 10, 2023 (Filing No. 15). ACBL mailed IWC a copy of the Amended Complaint but did not serve IWC with the Amended Complaint pursuant to Federal Rule of Civil Procedure 4.  *Id.* at 2.

On June 29, 2023, ACBL filed the instant Motion for Entry of Default, (Filing No. 19). Later that day, the Aparicios moved for dismissal (Filing No. 20; Filing No. 21).  IWC filed its Motion to Appoint Counsel on October 26, 2023 (Filing No. 24).  The Court will address ACBL's

Motion for Entry of Default, then the Aparicios' Motions to Dismiss, and, finally, IWC's Motion to Appoint Counsel.

## II.   ACBL'S MOTION FOR ENTRY OF DEFAULT

### A.   Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "Although Rule 55(a), Fed. R. Civ. P. refers to entry of default by the clerk, it is well established that a default also may be entered by the court."  *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc*., 687 F.2d 182, 185 (7th Cir. 1982).  "[B]ecause the Court, not its Clerk, is addressing the present motion, the question of entry of default merges with the question a court usually addresses later: whether good cause exists to set aside an entry of default under Rule 55(c)."  *Broadwater v. Kalina*, No. 13-cv-309, 2013 WL 3353946, at *1 (S.D. Ind. July 3, 2013).  Federal procedural law does not favor default judgments, and "courts must balance the need for efficient administration of justice with the preference for deciding cases on their merits and giving a party its day in court."  *McGrath v. Everest Nat'l Ins. Co*., 668 F.Supp.2d 1085, 1100–01 (N.D. Ind. 2009) (citing *Flying J., Inc., v. Jeter*, 720 N.E.2d 1247, 1249 (Ind. App. 1999)).

### B.   Discussion

ACBL moves for an entry of default against all Defendants.  ACBL contends that IWC was served on March 24, 2023, via the Texas Secretary of State, that the Aparicios were served on April 10, 2023, via certified mail, and that each of them has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure. The Court will discuss whether the entry of default is appropriate against IWC and the Aparicios in turn.

1.     **IWC**

ACBL's Affidavit for Entry of Default (the "Affidavit") states that service of the original Complaint on IWC "was accomplished on March 24, 2023 via the Texas Secretary of State" (Filing No. 19-1 at ¶ 8). IWC has not responded to ACBL's Motion for Entry of Default, but based on the Court's review of the record, IWC has not yet been properly served.

As an initial matter, the Court notes that ACBL has not attempted to serve IWC with the Amended Complaint pursuant to Rule 4, even though the Amended Complaint was filed before IWC had appeared and new claims were asserted against IWC. The Seventh Circuit has not yet addressed the question of whether an amended pleading asserting new claims must be served pursuant to Rule 4 on a party that has not yet appeared but is not yet in default. Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."); *see* 4B Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1146 (4th ed.) ("[I]t is clear that amended or supplemental pleadings must be served on parties who have not yet appeared in the action in conformity with Rule 4."); *see also IBEW Local 595 Health & Welfare Tr. Fund v. Givens Elec., Inc.*, No. C 09-0676, 2011 WL 2414346 (N.D. Cal. June 15, 2011) (collecting cases in which courts have set aside default judgments for failure to obtain Rule 4 service of amended complaint on party that had not yet appeared). However, the Court need not resolve that question because ACBL's service of the original Complaint on IWC was insufficient under Texas law.

On March 24, 2023, ACBL attempted to serve IWC through substituted service on the Texas Secretary of State pursuant to Section 5.251. Tex. Bus. Orgs. Code § 5.251; Fed. R. Civ. P. 4(e)(1) (allowing service to be made pursuant to laws of the state in which service is being made); (Filing No. 19-1 at 3). Section 5.251 provides that:

[t]he secretary of state is an agent of an entity for purposes of service of process, notice, or demand on the entity if: . . . (A) the entity fails to appoint or does not maintain a registered agent in [Texas]; or (B) the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity.

Tex. Bus. Orgs. Code § 5.251(1).  ACBL asserts that "IWC failed to maintain a registered agent in the State of Texas and/or IWC's registered agent could not with reasonable diligence be found at the listed registered agent's location," so the Texas Secretary of State became IWC's registered agent for service of process (Filing No. 19-1 at ¶ 8).

Under Section 5.251, "[]only after the registered agent of a corporation cannot be found *with reasonable diligence* at the registered office can the Secretary of State act as an agent of the corporation for service of process." *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 377 (Tex. App. 2007) (emphasis added).  Texas courts have consistently held that "'reasonable diligence' under section 5.251 may be shown by a single attempt to serve the registered agent at the registered address if further attempts would be futile."  *Dansk Express, LLC v. IPFS Corp.*, No. 01-22-00621, 2023 WL 4937497, at *4 (Tex. App. Aug. 3, 2023) (citing *Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.*, 121 S.W.3d 31, 34–35 (Tex. App. 2004; *see Catlin Specialty Ins. Co. v. Montelongo Inc.*, No. SA-12-CV-711, 2012 WL 5183585, at *1 (W.D. Tex. Oct. 18, 2012) (finding futility where plaintiff demonstrated that registered address was occupied by different business); *see also, e.g.*, *Acadian Props. Austin, LLC v. KJMonte Invs., LLC*, 650 S.W.3d 98, 108 (Tex. App. 2021) (finding futility where address given to Secretary of State did not exist); *Pirate Oilfield Servs., Inc. v. Cunningham*, No. 11-19-00080-CV, 2021 WL 1033976, at *4 (Tex. App. Mar. 18, 2021) (finding futility where process server learned that registered address was occupied by new property owners); *Ingram Indus., Inc.*, 121 S.W.3d at 34 (finding futility where it was learned the service location had not been occupied by defendant for ten years); *G.F.S. Ventures, Inc. v. Harris*, 934 S.W.2d 813, 816–17 (Tex. App. 1996) (finding futility where deputy found that the address

5

had been occupied by another resident for nearly a year); *BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 827–28 (Tex. App. 2012) (finding futility where property was vacant).

ACBL has not shown that it used reasonable diligence in attempting to serve IWC at its registered address before resorting to substituted service on the Texas Secretary of State. Although ACBL's single attempt to serve IWC at its registered address was returned as "undeliverable," ACBL does not explain why further attempts at service at IWC's registered address would be futile. (Filing No. 19-1 at ¶ 5.) For that reason, ACBL did not properly service IWC under Section 5.251, and the Motion for Entry of Default as to IWC is therefore **denied**.

Pursuant to Federal Rule of Civil Procedure 4(m),

[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). In its pending motions, IWC has provided a mailing address, and the Court anticipates that service can be perfected, so the Court will not dismiss this action as to IWC. Rather, in its discretion, the Court **extends** the deadline by which ACBL must serve IWC with a Summons and the Amended Complaint to **Friday, December 8, 2023**.

### 2. The Aparicios

ACBL also moves for an entry of default against the Aparicios. ACBL has filed certified mail return receipts showing service on Marco and Claudia on April 10, 2023 (Filing No. 16-1; Filing No. 17-1). Both receipts were apparently signed by "Carlos Gonzales," and the "Date of Delivery" box is blank on both receipts (Filing No. 16-1; Filing No. 17-1). ACBL moved for an entry of default on June 29, 2023, and later that day, the Aparicios filed their Motions to Dismiss challenging this Court's jurisdiction over them (Filing No. 20; Filing No. 21).

Based on their Motions to Dismiss and joint memorandum, the Aparicios appear to mistakenly believe that they cannot be served with process because the Court lacks personal jurisdiction over them.  The question of whether the Aparicios have been served with process is separate and distinct from the question of whether this Court may exercise personal jurisdiction over them.  Regardless, the Aparicios' apparent mistake explains their tardiness in responding to the Amended Complaint, and their Motions to Dismiss show an intent to defend against ACBL's claims (Filing No. 20; Filing No. 21).  To the extent ACBL was entitled to an entry of default, good cause exists to set it aside and a Clerk's default at this stage of the proceedings would be futile.  Therefore, the Motion for Entry of Default as to the Aparicios is **denied**.

### III.    THE APARICIOS' MOTIONS TO DISMISS

The Aparicios argue the claims against them should be dismissed under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(5) for insufficiency of service, Rule 21 for misjoinder, and Rule 12(b)(6) for failure to state a claim.  The Court will address each argument in turn.

### A.    Rule 12(b)(2)—Lack of Personal Jurisdiction

#### 1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint where there is a "lack of personal jurisdiction" over the defendant.  Fed. R. Civ. P. 12(b)(2).  When deciding a Rule 12(b)(2) motion, the court accepts the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff if they weigh on the issue of personal jurisdiction.  *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n,* 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001).  But where a complaint consists of conclusory allegations unsupported by factual assertions, the complaint fails even under the liberal standard of Rule 12(b). *Id.*

When considering a motion to dismiss for lack of personal jurisdiction, the court examines the sufficiency of the complaint, not the merits of the lawsuit. *Id.* The complaint does not need to include factual allegations concerning personal jurisdiction, but if the defendant moves to dismiss the action under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The level of the plaintiff's burden to show personal jurisdiction depends on whether an evidentiary hearing has been held. *Id.* Where a hearing has been conducted, the plaintiff must show by a preponderance of the evidence that personal jurisdiction exists. *Id.* Where no hearing is conducted and the motion to dismiss is decided solely on written materials, the plaintiff must establish a *prima facie* case that personal jurisdiction exists. *Id.*

"If jurisdiction is exercised on the basis of a federal statute that does not authorize nationwide service of process, the law requires a federal district court to determine if a court of the state in which it sits would have personal jurisdiction." *Annie Oakley Enters. v. Sunset Tan Corp. & Consulting, LLC*, 703 F. Supp. 2d 881, 886 (N.D. Ind. 2010) (citing *United States v. Martinez De Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990)). Indiana Trial Rule 4.4(A), Indiana's long-arm statute, governs personal jurisdiction in Indiana. "Although Rule 4.4(A) enumerates eight bases for the assertion of jurisdiction on the basis of a defendant's actions, the rule also includes a provision that 'a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.'" *Id.* (internal citation omitted). Thus, a court has personal jurisdiction to the limit allowed by the Federal Due Process Clause of the Fourteenth Amendment. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 966–67 (Ind. 2006).

For a court to have personal jurisdiction over a defendant, the Due Process Clause requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Under federal due process standards, personal jurisdiction can be either specific or general. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1244 (7th Cir. 1990). "If the defendant's contacts with the state are so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction." *LinkAmerica*, 857 N.E.2d at 967. "If the defendant's contacts with the forum state are not 'continuous and systematic,' specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state." *Id.* "Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there." *Id*. In other words, specific jurisdiction exists when a defendant has deliberately directed its activities toward the forum's residents, and the cause of action results from alleged injuries that arise out of or relate to those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

### 3.    <u>Discussion</u>

The Aparicios argue that this Court lacks personal jurisdiction over them because they, personally, have no contacts with the state of Indiana. In response, ACBL concedes that this Court does not have general personal jurisdiction over the Aparicios (<u>Filing No. 23 at 3</u>–4). However, ACBL argues that the Aparicios have consented to personal jurisdiction through a forum selection clause in the Contract, and that the Court may exercise specific personal jurisdiction over the Aparicios under Indiana's long-arm statute (<u>Filing No. 23 at 4</u>–7).

"The Indiana long-arm statute has been held to extend personal jurisdiction to the full limits established by the Due Process Clause of the Fourteenth Amendment." *Health Mgmt.*

*Professionals, Inc. v. Diversified Business Enters., Inc.*, 882 F. Supp. 795, 797 (S.D. Ind. 1995). This Court must therefore decide whether personal jurisdiction over the Aparicios is permissible under the Due Process Clause.

In the Amended Complaint, ACBL alleges the Aparicios made verbal misrepresentations to it regarding IWC's ability to pay amounts due under the Contract, submitted a false or misleading credit application to ACBL, and made false assurances to ACBL that IWC would pay outstanding invoices (Filing No. 12-1 at ¶¶ 36–40).  In *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012), the Seventh Circuit held that a Wisconsin court could exercise personal jurisdiction over an Arizona defendant who intentionally directed misrepresentations to the plaintiffs, Wisconsin residents.  The Northern District of Illinois provides a concise summary of *Felland*:

> In *Felland*, the plaintiffs, Wisconsin residents, entered into a contract to purchase a condominium unit in Mexico while they were on vacation in Arizona. The defendant was an Arizona resident. After the plaintiffs returned to their home in Wisconsin, the defendant communicated with them by phone and email, allegedly making fraudulent statements and misrepresentations that the project was properly financed and would be completed on time. The plaintiffs sued in Wisconsin. The Seventh Circuit overturned the Wisconsin district court's dismissal for lack of personal jurisdiction, holding that a view of fraud that only looked at the signing of the contract and not the subsequent communications was too narrow. Communications that lulled the plaintiff into a false sense of security and aided in the larger scheme to defraud, the court explained, are relevant to the defendant's minimum contacts with the state.

*Wedi Corp. v. Seattle Glass Block Window, Inc.*, No. 17-CV-06368, 2018 WL 1794771, at *3 (N.D. Ill. Apr. 16, 2018) (internal citations omitted).

The Seventh Circuit concluded that the defendants' misleading communications, directed to Wisconsin residents, created sufficient minimum contacts with Wisconsin.  *Felland*, 682 F.3d at 678–79; *see also Telular Corp. v. Vitech Am., Inc.*, No. 96 C 4749, 1996 WL 616590 (N.D. Ill. 1996) (finding that because defendant "was aware that its tortious conduct was directed at an Illinois business . . . [the defendant] had sufficient contacts with Illinois").

ACBL alleges that the Aparicios engaged in conduct similar to the defendant in *Felland* as the Aparicios made misrepresentations and provided false information to ACBL to induce ACBL to enter into the Contract (Filing No. 12-1 at ¶¶ 38, 40, 42, 53, 55). Although the Amended Complaint does not state whether the Aparicios' misrepresentations were directed to specific individuals located at ACBL's office in Indiana, Indiana is ACBL's principal place of business, so it is reasonable to infer that the Aparicios' communications were directed to Indiana, and that ACBL's alleged injury occurred there. Accordingly, ACBL has adequately alleged a *prima facie* case of personal jurisdiction over the Aparicios based on Indiana's long-arm statute.

The Court must next determine whether the exercise of personal jurisdiction over the Aparicios would offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316; *Felland*, 682 F.3d at 677–78; *Tamburo v. Dworkin*, 601 F.3d 693, 702, 709–10 (7th Cir. 2010). The following factors are relevant in making this determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477; *Felland*, 682 F.3d at 677; *Tamburo*, 601 F.3d at 709.

Indiana has a strong interest in providing a forum for its local businesses to seek redress for tortious injuries inflicted by out-of-state actors and suffered within the state. While the Aparicios may face some burden in being forced to defend an action in Indiana, their burden is no different than any out-of-state defendant, and there is no suggestion that their hardship will be any greater than that routinely tolerated by courts exercising specific jurisdiction over non-residents.

Because the alleged tortious behavior was purposefully directed at Indiana, ACBL's injuries arose out of the Aparicios' tortious conduct with Indiana, and exercising personal jurisdiction over the Aparicios does not offend traditional notions of fair play and substantial justice, the Court finds that it may exercise specific personal jurisdiction over the Aparicios. *Felland*, 682 F.3d at 678 ("[The defendant's] communications were intentional misrepresentations directed at the forum state that caused the harm felt by residents there.  Under these circumstances, [the defendant] could reasonably anticipate being haled into a [forum state] court.").  Because jurisdiction is proper under Indiana's long-arm statute, the Court need not address whether the Aparicios consented to jurisdiction.

**B.**      **Rule 12(b)(5)—Insufficiency of Service**

   **1.**   **Legal Standard**

Motions to dismiss under Rules 12(b)(2) and 12(b)(5) are interrelated and analyzed under the same standards.  *See Pike v. Decatur Mem'l Hosp.*, No. 04-CV-0391, 2005 WL 2100251, at *1 (S.D. Ind. Aug. 26, 2005) (citations omitted).  Rule 12(b)(5) establishes that a complaint can be dismissed for insufficient service of process.  If process is insufficient, the court lacks personal jurisdiction over the defendant, thus implicating Rule 12(b)(2).  *Id.* (citations omitted).  In making its determination, the court may consider affidavits and other documentary evidence.  *Id.* at *2. To withstand a motion to dismiss under Rule 12(b)(5), "the party on behalf of whom service is attempted bears the burden of proving its validity."  *Robinson v. Turner*, 886 F. Supp. 1460, 1462 (S.D. Ind. 1995).

   **2.**      **Discussion**

ACBL has submitted certified mail return receipts showing service on the Aparicios at their place of employment, IWC's principal place of business, on April 10, 2023.  Indiana Rule of Trial Procedure 4.1 provides that service may be made on an individual by "sending a copy of the

12

summons and complaint by registered or certified mail . . . to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter."  Ind. Trial Rule 4.1(A)(1).  The return receipts submitted by ACBL make such a showing.

Further, even though both receipts were signed by "Carlos Gonzales," instead of Marco or Claudia, service is still effective.  "Indiana courts have made clear that 'nothing in the trial rules require[es] that the individual to whom service of process is mailed be the one who signs the return receipt in order for service to be effective.  Rather, the rule requires only that service be *sent* by certified mail to the proper person.'"  *Batler v. Mellinger*, No. 21-cv-00028, 2021 WL 3029729, at *4 (S.D. Ind. July 16, 2021) (quoting *Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind. Ct. App. 1994) (emphasis in original)).  "This court has recently applied the rule, finding so long as service of process was mailed to the individual's residence or place of business, and a return receipt is signed and returned showing receipt of the letter, service by mail is effective even if someone other than the intended recipient ultimately signs the return receipt."  *Best Chairs Inc. v. Factory Direct Wholesale, LLC*, No. 14-cv-00067, 2015 WL 4641698, at *2 (S.D. Ind. Aug. 4, 2015) (internal quotation marks and citations omitted). The Aparicios were therefore properly served with process under Indiana law.

## C.     Rule 21—Misjoinder

### 1.     Legal Standard

Rule 18 of the Federal Rules of Civil Procedure allows joinder of multiple parties only when the allegations against them involve the same conduct or transaction and common questions of fact and law as to all defendants.  Rule 20(a) allows defendants to be joined in one action if: (1) a right to relief is asserted against them jointly with respect to the same transaction or occurrence; and (2) a question of law or fact common to all defendants will arise in the action.

13

In the case of misjoinder, "[t]he court may . . . add or drop a party. The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  "It is within the district court's broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).  Generally, if a district court finds that a plaintiff has improperly joined parties, the court should sever those parties or claims, allowing those grievances to continue in spin-off actions, rather than dismiss them. *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

### 2.  <u>Discussion</u>

The Aparicios contend that ACBL has not properly joined them as defendants because "there is no allegation of, or any factual basis for alleging, a connection between Marco Aparicio and Claudia Aparicio and the other defendants with respect to ACBL's claim."  (Filing No. 22 at 11.)  The Aparicios appear to have based this argument on ACBL's original Complaint, which asserted only a single claim of breach of contract against IWC, instead of the Amended Complaint, which alleges that the Aparicios made misrepresentations to ACBL. *Id*. (referring to "single action of Limited Liability Company" and "ACBL's claim"). Regardless, the Amended Complaint adequately alleges misconduct by the Aparicios "arising out of the same transaction, occurrence, or series of transactions or occurrences" as alleged in the counts against IWC, and it seeks to hold IWC and the Aparicios jointly and severally liable for those misrepresentations under a corporate veil piercing theory. The Court therefore concludes that the Aparicios were properly joined as Defendants under Rule 20 and declines to sever or dismiss ACBL's claims against them under Rule 21.

**D.**     <u>**Rule 12(b)(6)—Failure to State a Claim**</u>

    **1.**     <u>**Legal Standard**</u>

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, at 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. lqbal*, 556 U.S. 662, 678, at 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

    **2.**     <u>**Discussion**</u>

The Aparicios argue that ACBL has failed to allege an adequate basis for piercing the corporate veil, so the claims against them should be dismissed. "[V]eil-piercing claims are governed by the law of the state of the corporation whose veil is sought to be pierced," so even though ACBL cites Indiana law, Texas law applies.  *On Command Video Corp. v. Roti*, 705 F.3d 267, 272 (7th Cir. 2013).  "Under Texas law, 'there are three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud.'"  *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138 (5th Cir. 2004) (quoting

*W. Horizontal Drilling v. Jonney Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994)).  ACBL invokes

both the alter ego theory and the sham to perpetrate fraud theory.[1]

"Whether a plaintiff may pierce an entity's veil pursuant to either the alter ego theory or

the sham to perpetrate fraud theory depends on whether the plaintiff's claims sound in tort or

contract. Whereas a tort claimant may freely pierce the veil under either of these theories, a contract

claimant may only pierce the veil if the defendant has also committed an actual fraud against the

plaintiff for the defendant's direct personal benefit."  *AHBP LLC v. Lynd Co.*, No. SA-22-CV-

00096, 649 F. Supp. 3d 371, 386 (W.D. Tex. 2023) (citation omitted).  Because the Amended

Complaint asserts both breach of contract and tort claims, the Court will discuss both theories.

     a.     **Alter Ego Theory**

The alter ego theory allows for veil piercing "when there is such unity between corporation

and individual that the separateness of the corporation has ceased and holding only the corporation

liable would result in injustice." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986).  In

determining whether an alter ego relationship exists under Texas law, courts consider evidence of:

(1) comingling of funds; (2) representations that the individual will financially back the company;

(3) the diversion of company profits to the individual for personal use; (4) inadequate

capitalization; and (5) any other failure to keep corporate and personal assets separate. *See Booth*

*v. Kontomitras*, 485 S.W.3d 461, 483 (Tex. App. 2016).

In its Amended Complaint, ACBL alleges: Marco and Claudia are the sole members of

IWC (Filing No. 12-1 at ¶ 7); Marco and Claudia made verbal misrepresentations regarding IWC's

---

[1] ACBL does not allege or argue that IWC was used for "illegal purposes," so the Court will not address that veil piercing theory. "The illegal purpose doctrine is described as relating to the use of a corporate forum as a technique for avoiding legal limitations upon natural persons or corporation. The focus is on obligations or limitations imposed by the state. It does not appear to address obligations arising as a result of a contract between two parties as in the instant case." *In re JNS Aviation, LLC*, 376 B.R. 500, 530 (N.D. Tex. 2007), *aff'd sub nom. In re JNS Aviation, L.L.C.*, 395 F. App'x 127 (5th Cir. 2010).

ability to pay amounts due under the Contract (*id.* at ¶ 36); Marco and Claudia submitted a credit application to ACBL containing false or misleading information regarding IWC's ability to pay amounts that would become due and owing under the Contract (*id.* at ¶ 39); and Claudia falsely assured ACBL that IWC "would zero out all invoices from ACBL by the end of the year and promised to personally monitor the state of ACBL's invoices" (*id.* at ¶ 40). Most of ACBL's allegations refer generally to alleged conduct by "Defendants" or IWC's "agents, members, and representatives, including, *but not limited to* Marco and Claudia Aparicio." *Id.* at ¶ 35 –36, 38, 41–45, 48 –51, 53, 56–58, 60–61 (emphasis added).

ACBL further alleges in its "Count V – Veil Piercing Claim":

64.  As a result of the circumstances alleged herein, IWC has become so dominated by Marco and Claudia Aparicio that there has been a loss of corporate separateness between IWC and Marco and Claudia Aparicio.

65.  The lack of corporate separateness is evidenced through an absence of corporate records, commingling of funds, diversion of funds, evidence of potential insolvency, the failure of Marco and Claudia Aparicio to maintain an arm's-length relationship between themselves and IWC, and the fact that IWC appears to be a mere façade for the business and financial aims of Marco and Claudia Aparicio.

66.  As set forth herein, there also exist circumstances under which the continued recognition of Marco and Claudia Aparicio and IWC as separate entities would sanction fraud and promote injustice.

*Id.* at ¶¶ 64–65.

The above allegations, even construed broadly, do not establish a plausible alter ego relationship between IWC and the Aparicios.  The allegations regarding the Aparicios' role in IWC and their alleged misrepresentations, at most, show that the Aparicios are the sole members of IWC and that they made alleged misrepresentations as agents of IWC.  The allegations in ACBL's "Veil Piercing Claim" are a mere recitation of some of the factors that must be shown to pierce the corporate veil under Indiana law.  *See, e.g., Longhi v. Mazzoni*, 914 N.E.2d 834, 839 (Ind. Ct. App.

17

2009).   The Amended Complaint makes no mention of any alleged comingling of funds, any representations that the Aparicios would financially back IWC, inadequate capitalization, the diversion of IWC profits for personal use, or any other failure to keep IWC's and the Aparicios' assets separate. *See G4S Justice Servs., Inc. v. Corr. Program Servs., Inc.*, No. 07-cv-00945, 2009 WL 3200592, at *1 (S.D. Ind. Sept. 25, 2009) (granting dismissal on motion for judgment on the pleadings for failure to plausibly allege veil piercing allegations).

In its response brief, ACBL further argues that IWC's alleged inability to pay ACBL might have resulted from a commingling of assets (Filing No. 23 at 7) ("And if IWC didn't have [the proceeds to pay ACBL], one logical conclusion is that the Aparicios took it out of the company, essentially commingling IWC assets with personal assets."). This argument, however, is speculative and unsupported by any factual allegations. ACBL's citation to a prior lawsuit involving IWC is likewise unavailing. *Id.* The fact that another company has sought to hold IWC and the Aparicios jointly and severally liable for alleged fraud is not evidence of an alter ego relationship.[2]   ACBL has failed to adequately plead that the Aparicios are IWC's "alter ego" for purposes of piercing the corporate veil under Texas law.

### b.   <u>Sham to Perpetrate Fraud Theory</u>

The Texas Business Corporations Act sets out the requirements for veil piercing under a "sham to perpetrate fraud" theory.   Under § 21.223(a)(2), veil piercing is appropriate where an individual shareholder defendant "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder." Tex. Bus. Orgs. Code § 21.223(b). The Court need not address whether ACBL has

---

[2] The Court notes that Arguindegui Oil Company II, Ltd., nonsuited its lawsuit against IWC and the Aparicios a few months after initiating it, and no determinations regarding liability were made by the Texas court. *See* Notice of Nonsuit Without Prejudice, *Arguindegui Oil Co., II, Ltd. V. IWC Oil & Refinery, LLC*, No. 021-82184 (Harris Dist. Ct., Tex., May 25, 2022).

satisfied the "actual fraud" element of § 21.223 because it has not satisfied the "direct personal benefit" element.

"Personal benefit requires a plaintiff to plead that 'funds derived from the corporations' allegedly fraudulent conduct were pocketed by or diverted to the individual defendant.'  If funds are only used for a corporation's benefit or are diverted to other ventures, a plaintiff's claim fails." *Greathouse v. Cap. Plus Fin. LLC*, No. 22-CV-0686, 2023 WL 5759250, at *11 (N.D. Tex. Sept. 6, 2023) (quoting *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 665) (W.D. Tex. 2019)).  According to the allegations in the Amended Complaint, the Aparicios' alleged misrepresentations benefitted IWC, which was able to enter into the Contract and receive ACBL's services as a result (Filing No. 12-1 at ¶¶ 42, 50).  Similarly, the Amended Complaint alleges that "IWC has gained a monetary advantage" because of the alleged misrepresentations.  *Id.* at ¶¶ 46, 62); *see Hong v. Havey*, 551 S.W.3d 875, 886 (Tex. App. 2018) ("[E]vidence showing that fraudulently procured funds were used to satisfy a corporation's financial obligations cuts against the notion that the fraud was perpetrated primarily for the direct personal benefit of an individual.").

The Amended Complaint does not identify any direct personal benefit received by the Aparicios. And although the Aparicios are the owners of IWC, Texas courts have held that corporate ownership alone does not establish a direct personal benefit under § 21.223.  In *Morgan v. Fuller*, for example, the plaintiff, Morgan, sued a mobile home company, D&S Mobile Home Center, Inc. ("D&S"), for deceptive trade practices and attempted to hold its sole shareholder, Fuller, liable under a veil piercing theory.  Case No. 07-15-00314-CV, 2016 WL 2766106, at *2–3 (Tex. App. 2016); *see Morgan v. D&S Mobile Home Ctr., Inc.*, No. 07-13-00263-CV, 2014 WL 3809751 (Tex. App. Aug. 1, 2014).  The trial court concluded that the plaintiff had not adequately

shown that Fuller received a direct personal benefit from the transaction at issue.  *Morgan*, 2016 WL 2766106, at *1.  On appeal, the plaintiff argued Fuller received a direct personal benefit because:

> [the plaintiff's] payment to D&S for the mobile home was used to pay the debts of D&S and keep the company operating, That, in turn, benefited Fuller ". . . because the value [of] his property's liabilities were reduced . . . ." In other words, Fuller's shares in D&S were an asset of his, and so long as D&S remained in business by paying its debts, then his asset retained its value. So, he allegedly benefitted when the corporation used [the plaintiff's] money to pay its bills.

*Id.* at *2–3.

The Texas Court of Appeals disagreed, stating "the monies paid by Morgan were not pocketed by or diverted to Fuller.  Again, the funds were used to satisfy the financial obligations of D&S.  That is evidence tending to contradict the notion that the fraud previously attributed to D&S was perpetrated for the primary, direct benefit of Fuller."  *Id.* (citations omitted); *see Bates Energy Oil & Gas*, 361 F. Supp. 3d at 673–74 (finding plaintiff failed to sufficiently plead facts demonstrating fraud was primarily for direct benefit of individual defendant, Naumann, because fraudulently obtained funds were either transferred to the company, ELC, "or placed in "ELC/Naumann's" account); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 388–89 (Tex. App. 2007) (holding "the record reveals a complete absence of evidence of direct personal benefit to Haynes resulting from fraud" despite evidence that business owner had used fraudulently obtained funds to "'keep the business that [he] owned afloat, [and therefore] continued to receive a salary'"); *Rutherford v. Atwood*, No. 01-00-00113-CV, 2003 WL 22053687 (Tex. App. Aug. 29, 2003) (recognizing that the shareholder's "use of the [plaintiff's] funds allowed [the company] to pay personnel and suppliers on other jobs, to offset overdrafts on [the company's] account, and to continue to do business on other jobs . . . " but concluding that evidenced failed to

show shareholder's draws from company account related to contract at issue or were primarily for shareholder's direct personal benefit).

The Amended Complaint contains no factual allegations from which the Court may reasonably infer that either Marco or Claudia received a direct, personal benefit from the alleged misrepresentations. To the contrary, the Amended Complaint states that IWC was the beneficiary of those misrepresentations. ACBL has failed to adequately allege that the corporate veil should be pierced under a "sham to perpetrate fraud theory."

Because ACBL has not sufficiently alleged any grounds for piercing IWC's corporate veil under Texas law, its claims against the Aparicios must be dismissed for failure to state a claim. The Aparicios' Motions to Dismiss are therefore **granted**.

## IV.      IWC'S MOTION TO APPOINT COUNSEL

IWC has requested the Court's assistance in recruiting counsel to represent it in this action. The Court has no authority to "appoint" counsel in a civil proceeding. Pursuant to 28 U.S.C. § 1915(e)(1), courts are empowered only to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989).

> When confronted with a request . . . for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?

*Pruitt v. Mote*, 503 F.3d 647, 654-655 (7th Cir. 2007).

As explained in the Court's ruling on ACBL's Motion for Entry of Default, the Court does not yet have jurisdiction over IWC, so IWC's Motion to Appoint Counsel is **denied as moot**.

## V.      CONCLUSION

For the reasons explained above, ACBL's Motion for Entry of Default against Defendants Marco and Claudia Aparicios and IWC (Filing No. 19) is **DENIED**. ACBL is **ORDERED** to

serve IWC with a Summons and the Amended Complaint pursuant to Federal Rule of Civil Procedure 4 by no later than **Friday, December 11, 2023**.

Defendants Marco and Claudia Aparicios' Motions to Dismiss (Filing No. 20; Filing No. 21) are **GRANTED**. ACBL's claims against Marco and Claudia Aparicio are **dismissed without prejudice**.[3] ACBL is granted leave of **fourteen (14) days** from the date of this Order to file a second amended complaint amending its veil piercing allegations as to the Aparicios if such filing would not be futile.

IWC's Motion to Appoint Counsel (Filing No. 24) is **DENIED as moot**.

**SO ORDERED**.

Date:   11/21/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Marco Aparicio
8610 North New Braunfels, Suite 301
San Antonio, Texas  78217

Claudia Aparicio
8610 North New Braunfels, Suite 301
San Antonio, Texas  78217

IWC OIL & REFINERY, LLC
14546 Brook Hollow Blvd., #359
San Antonio, Texas  78232-3810

Matthew Lewis Bunnell
WYATT, TARRANT & COMBS, LLP
mbunnell@wyattfirm.com

Jordan M. White
WYATT TARRANT & COMBS, LLP (Louisville)
jwhite@wyattfirm.com

---

[3] "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed . . . [unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519, 520 (7th Cir. 2015).