## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| AMERICAN COMMERCIAL BARGE LINE LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:22-cv-00136-TWP-KMB |
| IWC OIL & REFINERY, LLC Clerk's Entry of Default entered 3/20/2024, MARCO APARICIO Clerk's Entry of Default entered 3/20/2024, CLAUDIA APARICIO Clerk's Entry of Default entered 3/20/2024, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### ORDER ON MOTION FOR DEFAULT JUDGMENT, MOTION TO QUASH, AND ENTRY OF DEFAULT JUDGMENT

This matter is before the Court on a Motion for Entry of Default Judgment (Dkt. 49) filed by Plaintiff American Commercial Barge Line LLC ("ACBL") and a Motion to Quash Default Judgment ("Motion to Quash") (Dkt. 52) filed by *pro se* Defendants Marco Aparicio ("Marco") and Claudia Aparicio ("Claudia") (together, the "Aparicios"). For the reasons explained below, the Aparicios' Motion to Quash is **denied**, ACBL's Motion for Default Judgment **is granted in part** and **denied in part**, and **default judgment** is entered against the Defendants.

### I.      BACKGROUND

In October 2022, ACBL initiated this action against Defendant IWC Oil & Refinery, LLC ("IWC") for breach of contract, and in the alternative, unjust enrichment, for failure to tender payment for charges it was contractually obligated to pay. (Dkt. 1). After twice attempting to serve the original Complaint on IWC—first via certified mail and then via substituted service on the Texas Secretary of State—ACBL filed its first Amended Complaint. The Amended Complaint

added new claims for unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation, and added the Aparicios as defendants under a corporate veil piercing theory. ACBL served the Aparicios with the first Amended Complaint in April 2023.

On June 29, 2023, ACBL moved for entry of default against IWC and the Aparicios for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure. (Dkt. 19). Later that same day, the Aparicios, acting *pro se*, moved to dismiss the Amended Complaint, on the basis that Plaintiffs did not have personal jurisdiction over them. (Dkts. 20, 21). A few weeks later, IWC, also *pro se*, filed a Motion to Appoint Counsel. In its Entry dated November 21, 2023 (the "November 2023 Entry"), the Court resolved the Motion for Entry of Default, Motion to Dismiss, and Motion to Appoint Counsel (Dkt. 26). The November 2023 Entry held, in part: IWC had not yet been properly served (*id.* at 4–6); the Aparicios had been properly served but entry of default was not appropriate (*id.* at 7, 12–13); and the first Amended Complaint failed to adequately state claims against the Aparicios under a corporate veil piercing theory (*id.* at 15–21). The Court therefore dismissed the claims against the Aparicios without prejudice, gave ACBL until December 5, 2023, to file a second amended complaint amending its veil piercing allegations, and gave ACBL until December 11, 2023, to effectuate service on IWC. *Id.* at 22.

On December 5, 2023, ACBL filed a Second Amended Complaint and proof of service on IWC (Dkt. 32; Dkt. 33). Just over two weeks later, all three Defendants filed a motion to dismiss the Second Amended Complaint (Dkt. 36; Dkt. 37). However, the motion was signed only by Marco in his official capacity as an IWC Officer. An attorney did not sign for IWC, and the Aparicios did not sign in their individual capacities as *pro se* litigants. Accordingly, on January 18, 2024, the Court struck the motion and clarified:

> Defendant IWC is **NOTICED** that it must retain counsel licensed to practice law before this Court, if it wishes to defend itself in this action. Should IWC fail to do

so, within **fourteen (14) days** from the date of this Order ACBL may seek default judgment against IWC in accordance with the Federal Rules of Civil Procedure and this Court's local rules due to IWC's failure to timely respond.

Defendants Marco and Claudia Aparicio are granted leave of **fourteen (14) days** from the date of this Order to file, if they so choose, pro se responsive pleadings or motions in response to ACBL's Second Amended Complaint. Each self-represented Defendant must sign their respective responsive pleadings or motions.

(Dkt. 41 at 1–2 (emphases in original)). The fourteen-day deadline passed without counsel appearing for IWC filing or the Aparicios filing any response to the Second Amended Complaint.

On February 20, 2024, ACBL moved for a Clerk's Entry of Default against Defendants (Dkt. 42), which was entered in March (Dkt. 43). Nearly three months passed without any activity from either side. Then in June 2024, ACBL filed the instant Motion for Default Judgment, seeking judgment in the amount of $440,744.47, which is comprised of $409,342.57 in damages and $31,401.90 in attorneys' fees and costs, plus pre- and post-judgment interest at a contractual rate of 1.5% per month (Dkt. 49).

Three more months passed before the Aparicios filed their Motion to Quash, seeking to set aside the "clerk's default judgment" pursuant to Federal Rule of Civil Procedure 60(b) and dismiss this case with prejudice (Dkt. 51). Rule 60(b) governs motions for relief from final judgments, but no final judgment had been entered when the Aparicios filed their Motion to Quash, so their request to set aside a default judgment is premature. The Court therefore construes the Motion to Quash as a combined motion to set aside the Entry of Default pursuant to Rule 55(c) and response in opposition to ACBL's Motion for Default Judgment. The Motions are ripe for the Court's review.

## II.    LEGAL STANDARDS

### A.    Motion to Set Aside Entry of Default

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). This Court has broad discretion to set

aside a default entry for good cause. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009). "A party seeking to vacate an entry of default prior to the entry of final judgment must show: '(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint.'" *Id.* (quoting *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007)). "While the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context." *Id.* at 631 (internal citation and quotation marks omitted).

## B.    Motion for Default Judgment

Obtaining a default judgment entails two steps. First, the party seeking a default judgment must file a motion for entry of default with the clerk of court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint. Fed. R. Civ. P. 55(a). Second, the moving party must seek entry of a default judgment against the defaulting party. Fed. R. Civ. P. 55(b). The court may enter a default judgment against a party who has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(b)(2). The decision to grant or deny a default judgment is within the court's discretion. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (indicating a decision on default judgment is reviewed for abuse of discretion).

A default judgment establishes the defendant's liability to the plaintiff on the cause of action alleged in the complaint. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "'Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Damages, however, "must be proved unless they are liquidated or capable of calculation." *Wehrs*, 688 F.3d at 892. In this circuit, judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, 722 F.2d at 1323.

## C.     Pro Se Litigants

Civil litigants who represent themselves ("*pro se*") benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant. *e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam) (requiring liberal construction of pro se litigant pleadings); *Timms v. Frank,* 953 F.2d 281, 283–84 (7th Cir.1992) (extending rule of *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), *cert. denied sub nom. Timms v. Coughlin,* 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992), requiring all pro se litigants to receive notice of summary judgment procedures before court may grant judgment against them), *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines. *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991); *Averhart v. Arrendondo,* 773 F.2d 919, 920 (7th Cir.1985).

## III.     DISCUSSION

The Court will first address whether the Entry of Default should be set aside before addressing ACBL's request for default judgment against all three Defendants.

## A.     Setting Aside Entry of Default

As noted above, a final judgment has not yet been entered against the Aparicios, so their request to set aside a default judgment pursuant to Rule 60(b) is premature, and the Court construes their motion as one to set aside the Entry of Default pursuant to Rule 55(c). Under Rule 55(c), to have the Entry of Default set aside, the Aparicios must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Cracco,* 559 F.3d at 630. The Court will first discuss whether the Aparicios have satisfied each of these requirements.

### 1.  Good Cause

The Seventh Circuit has elaborated on what constitutes "good cause," casting it as a process of weighing the equities to each side. *United States v. Di Mucci,* 879 F.2d 1488 (7th Cir. 1989).

Good cause is not equivalent to having a good excuse or showing excusable neglect. *Sims v. EGA Prods., Inc.*, 475 F.3d 865 (7th Cir. 2007). Instead, a court must consider the defaulting party's actions (*i.e.*, whether he or she quickly acted to correct the problem and whether he or she have meritorious defenses) and the prejudice to each side. *Di Mucci*, 879 F.2d at 1495. Good cause is found with an honest mistake, not as the result of willful misconduct, carelessness, or negligence. *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984).

The Aparicios argue they had no obligation to respond to the Second Amended Complaint, so their failure to respond is excusable. They specifically argue that they were not required to respond because: (a) they were not properly served; (b) the claims against them in the Amended Complaint were dismissed; and (c) the Second Amended Complaint is the same as the Amended Complaint. Some courts have held that a party's genuine mistake of law or inadvertence constitutes good cause for setting aside an entry of default. *See Cracco*, 559 F.3d at 631 ("[Defendant] has shown good cause for the lateness of its answer; it did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence."); *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (reversing entry of default judgment because plaintiff never "disabuse[d] [defendant] of its mistaken belief that service had not yet been effected," and there was "nothing in the record to indicate that [defendant's] failure to respond was willful"). This Court has even found that the Aparicios' initial confusion between service and jurisdiction excused their brief delay in responding to the first Amended Complaint (Dkt. 26 at 7).

However, the Motion to Quash makes clear that the Aparicios' failure to respond to the Second Amended Complaint was not the result of understandable confusion or an honest mistake. Instead, it was the result of a willful refusal to respond, motivated by incorrect and unsupported conclusions of law. This type of conduct is not "good cause." "[N]ot knowing the consequence for

6

failing to participate in required proceedings or where to file a responsive pleading does not constitute good cause to ignore required procedures or to not suffer the consequences for choosing not to participate." *Fair Hous. Ctr. of Cent. Ind. v. New*, No. 20-cv-1176, 2021 WL 4949216, at *3 (S.D. Ind. Jan. 20, 2021); *see also Hernandez v. Pueblo Cnty., DHS*, No. 19-cv-1533, 2022 WL 4467239, at *3 (D. Colo. Sept. 26, 2022) (denying Rule 60(b) motion to set aside judgment despite defendant's mistaken belief that her interrogatory responses were sufficient to defeat a summary judgment motion; "[T]his Court cannot say that a party's misunderstanding of the procedural rules of litigation constitutes the type of mistake contemplated by Rule 60(b)(1)—even in the case of a party acting *pro se*."); *Sw. Bell Yellow Pages, Inc. v. Niksch*, No. CIV-08-90, 2009 WL 1856208, at *1–2 (W.D. Okla. June 26, 2009) (denying Rule 60(b) motion to set aside judgment despite defendant's mistaken belief that his untimely answer to the complaint constituted a response to the court's later order directing defendant to respond to motion for default judgment).

The Court will address each of the Aparicios' given reasons for their failure to respond and explain why each is not good cause to set aside the Entry of Default.

### a. Insufficient Service

In their Motion to Quash, the Aparicios assert that ACBL has not yet properly served them, so they were not required to respond to the Second Amended Complaint (Dkt. 51 at 10, 13). The Aparicios specifically argue that service was improper because ACBL mailed summonses to several addresses and the Aparicios did not personally sign the return receipts. *Id.* at 10–11. In its November 2023 Entry, the Court fully addressed these same arguments and explained that the Aparicios *were properly served* (emphasis added):

> ACBL has submitted certified mail return receipts showing service on the Aparicios at their place of employment, IWC's principal place of business, on April 10, 2023. Indiana Rule of Trial Procedure 4.1 provides that service may be made on an individual by "sending a copy of the summons and complaint by registered or certified mail . . . to his residence, place of business or employment with return

receipt requested and returned showing receipt of the letter." The return receipts submitted by ACBL make such a showing.

Further, even though both receipts were signed by "Carlos Gonzales," instead of Marco or Claudia, service is still effective. "Indiana courts have made clear that 'nothing in the trial rules require[es] that the individual to whom service of process is mailed be the one who signs the return receipt in order for service to be effective. Rather, the rule requires only that service be sent by certified mail to the proper person.'" "This court has recently applied the rule, finding so long as service of process was mailed to the individual's residence or place of business, and a return receipt is signed and returned showing receipt of the letter, service by mail is effective even if someone other than the intended recipient ultimately signs the return receipt." *The Aparicios were therefore properly served with process under Indiana law.*

(Dkt. 26 at 12–13 (emphasis added) (alteration and omission in original) (citations omitted)).

ACBL mailed the Second Amended Complaint to Marco via certified mail at IWC's principal place of business, which the Court found to be sufficient in its November 2023 Entry (Dkt. 39-1 at 7). ACBL also mailed a copy to 6 Davenport Lane, San Antonio, Texas, which, according to public records,[1] is the Aparicios' residence. *Id.* at 5. Marco and Claudia were also both served at an address on Brook Hollow Boulevard in San Antonio, Texas, which is the address Defendants listed in their earlier motion to dismiss the Second Amended Complaint (Dkt. 36 at 3; Dkt. 37 at 24). The Aparicios also admit in their Motion to Quash that the Brook Hollow address is one of IWC's business addresses (Dkt. 51 at 10). The fact that the returns receipts for these addresses "were clearly not signed by defendants" does not make service improper or insufficient, as explained in the November 2023 Entry. *Id.*

But "[e]ven allowing for the possibility that [ACBL's] attempts to serve process were technically deficient in some regard, Indiana Trial Rule 4.15(F) mandates that 'no summons or

---

[1] Public property records for Bexar County, Texas, which encompasses San Antonio, lists the Davenport Lane residence as being owned by the Aparicios. Bexar CAD, *Property Search > 750172 APARICIO MARCO & CLAUDIA for Year 2025*, https://bexar.trueautomation.com/clientdb/Property.aspx?cid=110&prop_id=750172 (last visited Mar. 6, 2025); Fed. R. Evid. 201(b)(2) (allowing the Court to take judicial notice of facts that can be determined from sources whose accuracy cannot be reasonably questioned); *see Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (allowing district courts to take judicial notice of information from government websites).

service of process shall be set aside if either is reasonably calculated to inform the defendant of the impending action against him.'" *Batler v. Mellinger*, No. 21-cv-28, 2021 WL 3029729, at *5 (S.D. Ind. July 16, 2021) (quoting *Reed Sign Serv., Inc. v. Reid*, 755 N.E.2d 690, 696 (Ind. Ct. App. 2001)). ACBL mailed the Second Amended Complaint to all of the Aparicios' known personal and business addresses, including the address listed in their motion to dismiss the Second Amended Complaint. It is unclear what more ACBL could have done to effectuate service.

Further, it is apparent that the Aparicios were actually notified of the Second Amended Complaint, as they moved for dismissal fifteen days after it was filed. (Dkt. 36); *Batler*, 2021 WL 3029729, at *5 (stating that actual service "'may be considered in determining whether the notice was reasonably calculated to inform.'" (quoting *Nw. Nat'l Ins. Co. v. Mapps*, 717 N.E.2d 947, 955 (Ind. Ct. App. 1999))); *see also Reed Sign Serv., Inc.*, 755 N.E.2d at 696 n.5 (holding that actual notice is "strong evidence" that service of process was reasonably calculated to inform). Although the Court struck the motion from the record because Defendants did not comply with Federal Rule of Civil Procedure 11 and/or Local Rule 83-5, the Court extended the Aparicios' deadline to respond to the Second Amended Complaint:

> Defendants Marco and Claudia Aparicio are granted leave of **fourteen (14) days** from the date of this Order to file, if they so choose, *pro se* responsive pleadings or motions in response to ACBL's Second Amended Complaint. Each self-represented Defendant must sign their respective responsive pleadings or motions.

(Dkt. 41 (emphases in original)).

The Aparicios' position regarding insufficient service is untenable in light of the Court's prior orders explaining that service is proper even if third parties sign the return receipts and explicitly setting the Aparicios' deadline to respond to the Second Amended Complaint. The Aparicios cannot show "good cause" by rehashing unsuccessful arguments. *See Roor Int'l BV v.*

*Smokeys Tobacco Outlet 3*, No. 18-cv-241, 2020 WL 759413, at *2 (S.D. Ind. Feb. 13, 2020) (holding that defendant's argument regarding improper service did not show "good cause").

### b. Prior Dismissal of Claims

The Aparicios also contend, without legal support, that they "are not required to defend a suit that has been dismissed." (Dkt. 51 at 13, 16, 19). The Court previously dismissed ACBL's claims against the Aparicios "**without prejudice**," and granted ACBL leave "to file a second amended complaint amending its veil piercing allegations as to the Aparicios if such filing would not be futile." (Dkt. 26 at 22 (emphasis in original)). The Court's November 2023 Entry clearly allowed ACBL to amend and re-assert the previously dismissed claims against the Aparicios, which is precisely what ACBL did. The Aparicios cite no caselaw stating that a party may not reassert claims dismissed *without prejudice*, or that a defendant need not respond to re-asserted claims. "There is a difference between dismissing a suit without prejudice and dismissing a suit with leave to reinstate; *after a dismissal without prejudice, the plaintiff can resurrect his lawsuit only by filing a new complaint.*" *United States v. Ligas*, 549 F.3d 497, 502 n.2 (7th Cir. 2008) (emphasis added),

A defendant must respond to an amended complaint to avoid default, even if the amended complaint re-asserts previously dismissed claims. Rule 15 provides that "[u]nless the court orders otherwise, any required response to an amended pleading *must* be made . . . within 14 days after service of the amended pleading." Fed. R. Civ. P. 15(a)(3) (emphasis added). This language is not optional. The prior dismissal of claims in the Amended Complaint is not "good cause" for the Aparicios' failure to timely respond to the Second Amended Complaint.

### c. Similarities Between Amended and Second Amended Complaints

The Aparicios lastly argue that they were not obligated to respond to the Second Amended Complaint because it is substantially the same as the first Amended Complaint. The Aparicios

heavily rely on two cases in support of this position—*Yates v. Applied Performance Technologies, Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002) ("*Yates*"); and *Pethel v. Washington County Sheriff's Office*, No. 02cv799, 2007 WL 2359765 (S.D. Ohio Aug. 16, 2007) ("*Pethel*"). In *Yates* and *Pethel*, the plaintiffs filed a complaint, the defendants filed a motion to dismiss, and then, while the motion to dismiss was still pending, the plaintiffs filed an amended complaint that was the same as the original except for the addition of new defendants. *Yates*, 205 F.R.D. at 499; *Pethel*, 2007 WL 2359765, at *2. The Aparicios argue that ACBL's Second Amended Complaint is almost identical to its first Amended Complaint, so under *Yates* and *Pethel*, they are not required to respond.

Other district courts besides the Southern District of Ohio, including courts in the Seventh Circuit, have allowed defendants to apply pending motions to dismiss to a later-filed amended complaints. But there are two important distinctions between those cases and this case. First, in those cases, the motions to dismiss were still pending when the amended complaints were filed. In this case, the Court had ruled on the Aparicios' Motion to Dismiss by the time ACBL filed its Second Amended Complaint; because the Motion to Dismiss was no longer pending, it could not be applied it to the Second Amended Complaint.

Second, in *Yates*, *Pethel*, and similar cases, the amended complaints did not "attempt to cure the defect alleged in the original motion to dismiss." *Yates*, 205 F.R.D. at 499. In other words, the amended complaints did not add or amend any allegations in response to the arguments raised in the motions to dismiss. But in this case, ACBL attempted to cure the defect alleged in the Aparicios' motion to dismiss by newly alleging that the Aparicios commingled funds "by, for example, using IWC credit cards to pay for personal expenses, using IWC to provide personal loans, and maintaining jewelry and watches as IWC assets." (Dkt. 33 ¶ 66).

The Aparicios cite no case law, and the Court has found none, supporting their position that they are not required to respond to the Second Amended Complaint simply because they believe it is still deficient. The similarities between the Amended Complaint and Second Amended Complaint therefore do not demonstrate good cause for the Aparicios' failure to timely respond.

Because the Aparicios' have not shown good cause for their failure to timely respond to the Second Amended Complaint, their request to set aside the Entry of Default must be **denied.**

For the sake of thoroughness, the Court will address whether the Aparicios have met the other requirements for setting aside an entry of default: a quick response and meritorious defense.

### 2.  Quick Response

The Aparicios waited six months after the Clerk's Entry of Default, and three months after ACBL filed its Motion for Default Judgment, to file their Motion to Quash. Whether six months is "quick action" depends "on the particular circumstances of the defaulted defendant." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). "If, for instance, the defendant (through no fault of his or her own) did not even become aware of the default judgment until one month (or six months) after its entry, maybe trying to vacate the judgment at that late date would be quick enough to satisfy the standard." *Id.* Here, the Aparicios offer no reason why they waited several months to file their Motion to Quash. Even if they (mistakenly) believed that they were not required to respond to the Second Amended Complaint, they should have raised that argument promptly after the Entry of Default or ACBL's Motion for Default Judgment was filed. Notably, the Aparicios moved quickly to oppose ACBL's first motion for entry of default (Dkt. 20) and to move to dismiss the Second Amended Complaint (Dkt. 36). So, the Aparicios were plainly capable of a quick response.

Other courts have held that defendants failed to take "quick action" by moving to set aside defaults in less time than the Aparicios took to file their Motion to Quash. *See New*, 2021 WL

4949216, at *5 (S.D. Ind. Jan. 20, 2021) (finding failure to take action for over five weeks was not "quick"); *PRN Pharm. Servs., LP v. Alpha Home Ass'n of Greater Indianapolis, Inc.*, No. 13-cv-1938, 2015 WL 364242, at *4 (S.D. Ind. Jan. 26, 2015) (finding failure to take action for four months after entry of default and two months after default judgment was not "quick action" and denying motion to set aside default judgment); *Bekes v. Wash. Cnty. Bd. of Cnty. Comm'rs*, No. 04-cv-201, 2005 WL 8165688, at *3 (S.D. Ind. Sept. 30, 2005) ("The Seventh Circuit provides helpful guidance as to what constitutes a reasonable time. Delays of four months, of fifty-five days, and of less than five weeks have all been found to be inexcusable."; citing cases); *Wells Fargo Equip. Fin., Inc. v. PMRC Servs., LLC*, No. 10 C 2438, 2011 WL 635861 (N.D. Ill. Feb. 11, 2011) (finding failure to take action for ten weeks after a default judgment was not "quick action"; collecting cases where even shorter passages of time were deemed "not quick action"); *Leadership Council for Metro. Open Cmtys., Inc. v. Quality Realty Inc.*, No. 98 C 7853, 1999 WL 1046431 (N.D. Ill. Nov. 9, 1999) (finding failure to take action until approximately three months after entry of default and two months after default judgment was not "quick action"); *see also Dunn v. GJI, Inc.*, No. 16-cv-3276, 2017 WL 3328129, at *4 (S.D. Ind. June 28, 2017) (finding four-month delay was "undoubtedly on the outer edges of what may reasonably constitute 'quick action,'" but finding that specific facts were "sufficiently extraordinary" to find "quick action"). In light of the circumstances of this case, the Aparicios' action to oppose the Motion for Default Judgment was not a "quick action" to set aside the Entry of Default.

The Court also finds that the Aparicios' delay has caused prejudice to ACBL's ability to proceed in the efficient prosecution of its case and to the Court's orderly administration of its docket. This action was filed in October 2022, and although this case has lingered in part due to ACBL's unsuccessful attempts at service and slowness in seeking a default judgment, the

Aparicios' six-month silence has exacerbated the issue. Moreover, it is clear from all of the Aparicios' filings—including their continued efforts to improperly represent IWC—that they have no intention of litigating the merits of ACBL's claims anytime soon. The Court also notes that Defendants are parties to other lawsuits, and several judgments totaling millions of dollars have been entered against IWC and/or the Aparicios while this action has been pending.[2] Further delay therefore also presents a risk of prejudice to ACBL's ability to obtain its requested relief. Considering all circumstances, the Aparicios' lengthy and unexplained delay and risk of prejudice to ACBL, the Court finds that the Aparicios did not take "quick action" to correct their defaults.

### 3. Meritorious Defense

Finally, the defaulting party must have a meritorious defense to the plaintiff's claims. A meritorious defense is not necessarily one that must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment, and which is supported by a developed legal and factual basis. *Wehrs*, 688 F.3d at 890–91; *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990); *Breuer Elec. Mfg. Co., v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982).

The Aparicios' Motion to Quash contains sparse assertions regarding the merits of ACBL's claims. They argue that ACBL does not cite a "statute" for its breach of contract claim (Dkt. 51 at 1); ACBL "improperly place[s]" jurisdiction in this Court because "ACBL is a Delaware resident and IWC [is] a Texas resident" (*id.* at 2); and the parties' contract "lacks necessary date of execution

---

[2] Judgment in a Civil Action, *Kansas City S. de Mexico S.A. de C.V. v. IWC Oil Refinery LLC*, No. 24-CV-349 (W.D. Tex. Sept. 10, 2024) (entering judgment in the amount of $2,747,887.23); Final Default Judgment, *Union Tank Car Co. v. IWC Oil & Refinery, LLC*, No. 22-cv-1326 (W.D. Tex. July 11, 2024) (entering default judgment in the amount of $625,999.42); Order, *IWC Oil & Refinery, LLC v. Tyr Energy Logistics, LLC*, No. 2021-84351 (Texas Dist. Ct. Harris Cnty. Dec. 8, 2023) (confirming arbitration award in the amount of $1,917,000.00 and rendering judgment on arbitration award); Agreed Journal Entry of Judgment, *Trinity Chem. Indus., LLC v. IWC Oil & Refining, Inc.*, No. CJ-2023-0275 (Tulsa Cnty. Dist. Ct. Apr. 17, 2023) (entering agreed judgment in the amount of $54,752.00); Judgment, *Vision33, Inc. v. IWC Oil & Refinery, LLC*, No. 2022-01278871 (Cal. Superior Ct. Orange Cnty. Jan. 13, 2023) (entering default judgment in the amount of $98,640.72).

to affirm" (*id.*). As presented, these arguments lack any factual or legal support and are too conclusory and undeveloped to raise a "serious question" regarding the propriety of a default judgment. *Wehrs*, 688 F.3d at 890–91. They therefore do not constitute meritorious defenses. Additionally, because the Aparicios' arguments regarding service were already rejected in the Court's November 2023 Entry, they do not form a meritorious defense. The Aparicios challenge the sufficiency of the Second Amended Complaint for the same reasons raised in their Motion to Dismiss the first Amended Complaint, but even if their sufficiency argument is considered a "meritorious defense," the Aparicios still do not satisfy the "good cause" and "quick response" requirements to set aside an entry of default.

Although the Seventh Circuit has articulated "a policy favoring trial on the merits," *Cracco*, 559 F.3d at 631, it does not necessarily "disfavor[] default judgments." *Stafford v. Mesnik*, 63 F.3d 1445, 1450 (7th Cir. 1995). There is a "precious balance" between the preference for decisions on the merits "and the need to promote efficiency in the administration of justice and avoid prejudice to parties who have conducted themselves responsibly." *Bieganek v. Taylor*, 801 F.2d 879, 881 (7th Cir. 1986). The Seventh Circuit has also noted that as caseloads have increased, it has "become more tolerant of the use of default judgments in order to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1117 (7th Cir.1994) (quotation marks and citations omitted).

Even considering the liberal standard applied in construing the Aparicios pleadings, they have not satisfied the requirements for setting aside an entry of default and have demonstrated a willful refusal to respond to ACBL's claims and litigate this case properly. The Court therefore will not set aside the Entry of Default and **denies** the Motion to Quash.

### 4. **Arguments Regarding IWC**

In their Motion to Quash, the Aparicios raise several arguments regarding the Entry of Default against IWC. But because the Aparicios are not attorneys, they cannot represent IWC. *See Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008) ("Corporations cannot appear *pro se*, and one *pro se* litigant cannot represent another." (citations omitted)). And limited liability companies, like IWC, cannot represent themselves. *S.E.C. v. Koester*, 13 F. Supp.3d 928, 935 (S.D. Ind. 2014).

The Court thoroughly explained to IWC that it must retain a licensed attorney to represent it in this action or face the possibility of a default judgment (Dkt. 41 at 1–2). IWC previously filed a motion requesting the Court's assistance in recruiting counsel, but the Court necessarily denied the motion as moot because, at the time, the Court did not yet have jurisdiction over IWC. Unfortunately, IWC did not refile a request for assistance once it had been served or otherwise secure legal counsel on its own.

Because the Aparicios cannot represent IWC, and IWC has not appeared by counsel, there is no basis to set aside the Entry of Default against IWC. The Motion to Quash, to the extent it seeks to set aside the Entry of Default against IWC, is **denied**.

## B. **Entry of Default Judgment**

The Aparicios oppose the Motion for Default Judgment by challenging the sufficiency of the Second Amended Complaint and arguing that ACBL has committed fraud.[3] The Court will address the Aparicios' arguments and then discuss whether ACBL has shown it is entitled to a default judgment.

---

[3] As explained above, the Court construes the Aparicios' Motion to Quash as a combined motion to set aside the Entry of Default and a response in opposition to ACBL's Motion for Default Judgment.

## 1. __Sufficiency of the Second Amended Complaint__

Although the Entry of Default establishes that Defendants are liable to ACBL, the Aparicios may still challenge the legal sufficiency of the Second Amended Complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) ("The entry of a default order does not . . . preclude a party from challenging the sufficiency of the complaint."). However, the Aparicios' sufficiency arguments are untimely and fail on the merits.

ACBL's Motion for Entry of Default Judgment filed on June 19, 2024, and Defendants response to the Motion for Default Judgment was due two weeks after it was filed (July 4, 2024). S.D. Ind. L.R. 7-1(c)(3)(A). The Motion to Quash was not filed until September 25, 2025, and is therefore untimely. Further, the Second Amended Complaint alleges that the Aparicios and IWC commingled funds by, "for example, using IWC credit cards to pay for personal expenses, using IWC to provide personal loans, and maintaining jewelry and watches as IWC assets." (Dkt. 33 ¶ 66). These factual allegations are enough to plausibly allege that IWC is the Aparicios' alter ego. *See Adams Offshore Ltd. v. OSA Int'l, LLC*, No. H-09-465, 2011 WL 4625371, at *10 (S.D. Tex. Sept. 30, 2011) (finding that allegations that one company made wire transfers to satisfy the debts of other companies with common ownership were "sufficient to demonstrate the plausibility of blended identities" between them).

The Court's November 2023 Entry made clear that the first Amended Complaint was deficient because it made "no mention" of any specific facts showing a lack of separateness between IWC and the Aparicios (Filing No. 26 at 18 ("The Amended Complaint makes *no mention of any alleged comingling of funds* . . . .")). The Second Amended Complaint cured that defect, albeit with minimal amendments, and the Court concludes that the Second Amended Complaint adequately alleges liability against the Aparicios under a corporate veil piercing theory.

## 2. __Fraud and Misrepresentation__

The Aparicios next argue that any default judgment would need to be set aside because ACBL is attempting to obtain it through fraud and misrepresentations. Fed. R. Civ. P. 60(b)(3) (allowing the court to set aside judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party"). "To obtain relief under Rule 60(b)(3), a party must show that she has a meritorious claim that she was prevented from 'fully and fairly presenting' at trial as a result of the adverse party's fraud, misrepresentation, or misconduct. . . . Fraud on the court is actionable only if it prejudices the adverse party." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). "A party seeking to set aside a judgment under Rule 60(b)(3) or the court's inherent power must prove fraud by clear and convincing evidence." *Id.* at 759.

The Aparicios argue that ACBL committed fraud by falsely stating that it had served them with the Second Amended Complaint and by filing a Second Amended Complaint that is substantially the same as the first Amended Complaint (Dkt. 26 at 7–12). As discussed above, ACBL did not mislead the Court regarding service of process. ACBL properly served the Aparicios at several addresses, including both personal and business addresses, and received signed return receipts from many of those addresses. And as the Court explained in the November 2023 Entry, the Aparicios did not need to personally sign the return receipts for service to be effectuated. Additionally, the Aparicios' statement that ACBL "did not allow [them] to respond or have the matter heard on the merits" is disingenuous in light of the fact that Defendants received actual notice of the Second Amended Complaint and were granted leave to re-file a motion to dismiss the Second Amended Complaint (Dkt. 41).

The Aparicios' fraud claim related to the contents of the Second Amended Complaint is also unpersuasive. The Court granted ACBL leave to amend its complaint to add allegations about

its veil piercing theory, and ACBL did just that by filing the Second Amended Complaint. ACBL's decision to make only minimal amendments does not constitute fraud. "A plaintiff is the master of [its] own complaint," so ACBL was free to choose what allegations to assert (or not assert) in its amended complaint. *Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017). If the Aparicios believed that the Second Amended Complaint was still deficient, then it was the Aparicios' responsibility to timely raise that argument with the Court.

### 3.  **ACBL's Motion for Default Judgment**

Since Defendants have failed to timely respond to the Second Amended Complaint, all of the well-pleaded factual allegations in the Second Amended Complaint regarding liability are taken as true, and those allegations are sufficient to establish liability. As summarized in ACBL's motion, those allegations include that

> ACBL and IWC, by and through their duly authorized representatives, entered into Liquid Cargo Contract No. 393633 (the "Contract") on or about October 11, 2021, following the receipt of a credit application, tax documents, financial statements, and other information from IWC and its individual members, Marco and Claudia Aparicio. Under the terms of the Contract, ACBL agreed to, among other things, provide barge transportation services to IWC for the shipment of cargo from March 16, 2022 through June 16, 2022 utilizing barges and other equipment owned and/or operated by ACBL. In exchange, Defendants were to pay ACBL a base rate of $6,400 per day, demurrage at a set rate per barge per day, and other expenses required for the movement of cargo, including, but not limited to, fleeting, dockage, wharfage, equipment cleaning, and towing costs.
>
> After the Contract was executed, ACBL and Defendants agreed to extend the duration of the Contract to July 16, 2022 and increased the base rate to $7,500 per day effective June 16, 2022 (the "First Amendment"). ACBL then provided barge(s) to Defendants for transporting the designated cargo, and subsequently transited said cargo as required by the terms of the aforementioned agreements. But Defendants failed to tender payment for the charges they were contractually obligated to pay.

(Dkt. 49 at 1-2). With liability established, the Court turns to the relief requested.

It is the plaintiff's burden to establish a right to its requested relief, and the court may not order such relief unless it can determine "with reasonable certainty" the proper amount to award

as damages based on evidence offered at a hearing or in "definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, 722 F.2d at 1323 (citations omitted); *see also In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). ACBL requests a judgment in the amount of $440,744.47, which is comprised of $409,342.57 due under the parties' contract (the "Contract"), and $31,401.90 in costs and attorneys' fees, plus pre- and post-judgment interest (Dkt. 49 at 8). The Court will address each requested amount separately.

### a. Amounts Due under the Contract

ACBL submits an Affidavit of Debt from Sean Gallagher, Senior Corporate Counsel for ACBL and an "accounts receivable ledger" (the "Ledger") listing the outstanding invoices arising from the Contract, totaling $409,342.57 after application of a $21,877.47 credit on IWC's account (Dkt. 49-1 at 19). The Court finds that Mr. Gallaher's Affidavit and the Ledger adequately support ACBL's claim for damages in the amount of $409,342.57.

### b. Attorneys' Fees and Costs

ACBL further requests $31,401.90 in attorneys' fees and costs (Dkt. 49 at 8). The Contract provides: "Shipper shall pay ACBL all costs incurred in collecting any past due amount from Shipper, including court costs and reasonable attorney fees." (Dkt. 49-1 at 9). In support of its request for costs and fees, ACBL submits an Affidavit from Matthew Bunnell, counsel for ACBL, and invoices for legal services provided to ACBL in connection with this action (the "Invoices") reflecting $30,716.50 in fees and $685.40 in costs (Dkt. 49-3 ¶ 7).

The Seventh Circuit has explained that fee-shifting contract provisions, unlike fee-shifting statutes, "require 'reimbursement for commercially-reasonable fees no matter how the bills are stated.' Thus, the standard in a contractual fee-shifting case is a 'commercially reasonable' standard, and does not require courts to engage in 'detailed, hour-by-hour review' of a prevailing party's billing records." *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 572 (7th Cir. 2011) (internal

citations omitted) (quoting *Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.*, 200 F.3d 518, 520 (7th Cir. 1999) and *Balcor Real Est. Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996)). In determining whether fees are commercially reasonable, "a court will look to the aggregate costs in light of the stakes of the case and opposing party's litigation strategy," and a "willingness to pay is an indication of commercial reasonableness." *Id.*

The total amount of attorneys' fees of $30,716.50 and $685.40 in costs are not unreasonable considering the stakes of the case: ACBL recovered over four hundred thousand dollars. ACBL's fees and costs are also not unreasonably high in light of the difficulties ACBL faced in effectuating service on the Aparicios and in responding to their lengthy filings and repetitious arguments.

### c.  Pre- and Post-Judgment Interest

ACBL also claims it is entitled to "pre-judgment and post-judgment interest at the agreed rate of 1.5% per month from the date each invoice came due." (Dkt. 33 at 5). For the reasons below, ACBL is not entitled to pre-judgment interest, but it is entitled to post-judgment interest.

### i.  Pre-Judgment Interest

"In diversity actions such as this case, a federal court must look to state law to determine the propriety of awarding prejudgment interest." *Travelers Ins. Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1051 (7th Cir. 1988) (applying Indiana law). "An award of prejudgment interest in a contract action is appropriate purely as a matter of law when the breach did not arise from tortious conduct, the amount of the claim rests on a simple calculation, and the trier of fact does not need to exercise its judgment to assess the amount of damages." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 757 (Ind. 2018). "The test for determining whether an award of prejudgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. . . . [A]n award of prejudgment interest is generally not considered a matter of discretion." *Noble Roman's, Inc. v. Ward*, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002) (citations omitted).

The Contract provides that IWC will pay interest on all unpaid invoices at a monthly rate of 1.5% beginning on the date an invoice is due, which is fifteen days from the invoice date, until the invoice is paid (Dkt. 33-1 at 3, 9). However, the Contract does not specify how a credit, like the $21,877.47 credit on IWC's account (Dkt. 49-1 at 19), should be applied to unpaid invoices. The credit could be applied to the earliest dated invoices, applied to the latest dated invoices, or divided equally among all invoices, among other options. Awarding pre-judgment interest would therefore require the Court to use its discretion in applying the credit to unpaid invoices and ascertaining which invoices, in what amounts, became due on what dates. The amount of ACBL's damages thus cannot be ascertained as of a particular time, and ACBL's request for pre-judgment interest must be **denied**.

### ii. Post-Judgment Interest

ACBL is entitled to post-judgment interest. Indiana Code § 24-4.6-1-101 provides, in relevant part, "[e]xcept as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction . . . ." Ind. Code § 24-4.6-1-101. "The statutory language is mandatory: interest 'shall be' rendered from the date of judgment." *Denman v. St. Vincent Med. Grp., Inc.*, 176 N.E.3d 480, 503 (Ind. Ct. App. 2021); *see also Poehlman v. Feferman*, 717 N.E.2d 578, 583 (Ind. 1999) ("[I]t has been the intention of the law in this State for nearly 25 years that there should be an incentive on the part of judgment debtors to satisfy expeditiously their debt obligations to avoid this accrual of interest."). Post-judgment interest also applies to awards of attorneys' fees. *See Pac-Van, Inc. v. Wekiva Falls Resort*, 975 N.E.2d 831, 832 (Ind. Ct. App. 2012).

ACBL's request for post-judgment interest is therefore **granted**. The parties agreed to a 1.5% monthly interest rate in the Contract, Ind. Code § 24-4.6-1-101(1), so ACBL is entitled to

post-judgment interest on its damages and attorneys' fees awards, totaling $440,744.47, at a rate of 1.5% per month beginning on the date of final judgment.

## IV.    CONCLUSION

For the reasons explained above, the Aparicios' Motion to Quash (Dkt. 51) is **DENIED**, and ACBL's Motion for Entry of Default Judgment (Dkt. 49) is **GRANTED in part and DENIED in part**. The Motion is **granted** in that **DEFAULT JUDGMENT** is entered against Defendants, jointly and severally, in the following amounts: $409,342.57 in damages; $31,404.90 in attorneys' fees and costs; and post-judgment interest on the total award of $440,744.47 at the rate of 1.5% per month in accordance with the Contract. In total, excluding post-judgment interest, ACBL may not recover more than $440,744.47 total from any combination of payments from any Defendant.[4]

Final judgment will issue under separate order.

**SO ORDERED**.

Date:
_____
3/14/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

MARCO APARICIO
8610 N. New Braunsfels Ave
#301
San Antonio, TX 78217

CLAUDIA APARICIO
8610 N. New Braunsfels Ave
#301
San Antonio, TX 78217

Matthew Lewis Bunnell
White & Eldemire PLLC
matthew@we-firm.com

---

[4] In accordance with the Federal Rules of Civil Procedure, this Entry does not preclude the Aparicios from filing a motion pursuant to Federal Rule of Civil Procedure 60(b) once final judgment is entered, but any such motion should not attempt to rehash arguments or raise issues that the Court has already resolved.